**William R. HOLLAND, Plaintiff,**

v.

**The GOODYEAR TIRE & RUBBER COMPANY, Defendant.**

**No. C73–867.**

United States District Court, N. D. Ohio, E. D.

July 18, 1975.

November & Arnold, Alan Arnold, Cleveland, Ohio, for plaintiff.

John F. McClatchey, Leslie W. Jacobs, Thompson, Hine & Flory, Cleveland, Ohio, H. Richard Schumacher, Denis G. McInerney, Dudley B. Tenney, David R. Hyde, Cahill, Gordon & Reindel, New York City, Thomas A. Deveny, Goodyear Tire & Rubber Co., Akron, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

BATTISTI, Chief Judge.

Plaintiff, by the instant action, seeks damages for alleged violations of section 2 of the Sherman Act, 15 U.S.C. § 2 (1970). According to plaintiff's amended complaint, Goodyear has allegedly monopolized or attempted to monopolize the replacement automobile tire market. This action is sought to be maintained as a class action on behalf of plaintiff and "all other persons who, within four years prior to the date of the filing of this Complaint, resided within the State of Ohio, and, while so residing, purchased new replacement tires for passenger automobiles from any outlet owned by the defendant and located within the State of Ohio."

Presently before the Court is plaintiff's motion for leave to file a second amended complaint and for class certification. Also

pending is defendant's motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted or, in the alternative, to dismiss the class action allegations of the amended complaint.

Plaintiff, by his second amended complaint, seeks to redefine the purported class so as to impose more restrictive parameters in terms of both time and space. The "new" class would consist of those residents of Summit County who purchased new replacement tires for passenger automobiles from company owned outlets within Summit County during the fiscal quarter in which plaintiff purchased his tires.

Defendant seeks dismissal of this action on the grounds that the allegations of the amended complaint neither support a charge of monopolization or attempted monopolization, nor are there any facts which plaintiff could plead or prove which would support such charges. Alternatively, defendant seeks dismissal of the class action allegations contained in the complaint because (a) plaintiff is not a member of the class he seeks to represent, (b) plaintiff, in his dual capacity as class representative and attorney for the class, cannot adequately represent the class, and (c) the class, as presently defined, is unmanageable. These last contentions shall be dealt with first, and they, in turn, seriatim.

## I. *Plaintiff's Representative Status*

This private antitrust action found its genesis in Government antitrust actions filed against Goodyear and Firestone Tire and Rubber Company on August 9, 1973. Plaintiff concedes that his action was precipitated by the initiation of the Government suits and, in fact, was filed only seven days after the Government complaint.

In order to place himself in the class he seeks to represent, plaintiff alleges that his wife, on or about August 30, 1969, bought two tires from the Goodyear Service Store in Akron, Ohio. Plaintiff, however, possesses no documentation in the form of a receipt or cancelled check to verify the alleged purchase. Instead he contends that his wife cashed a check for $65 and used a portion of the proceeds to purchase the tires. Plaintiff has, in this regard, produced a cancelled check for $65 made payable to and endorsed by a third party, dated August 30, 1969.

Defendant, on the other hand, has submitted the affidavit of John Kovac who is the Office Manager of the Goodyear Service Store at which the alleged purchase of the tires took place. Mr. Kovac stated that all retail tire transactions are recorded on consecutively numbered sales invoices that are retained in the store's files for a minimum of six and one-half years. These invoices contain detailed information as to the name of the customer, the specific product involved, as well as the date and amount of the transaction. Invoices used for tire sales are distinctive in their numerical sequencing as well as their physical design and it is unlikely that a retail tire sale would be recorded on any invoice other than the one designed for that purpose.

Defendant conducted an examination of all sales invoices for the period August 15, 1969 through September 30, 1969, including those emanating from departments that sell products other than automobile tires. The search revealed that seven invoices were missing from the entire store. Four of the seven missing invoices were from the tire department. There are, however, no invoices missing from any department from August 22, 1969, through September 3, 1969, and no invoices missing from the tire department from August 15, 1969, through September 3, 1969. Thus, if plaintiff purchased the tires in question on August 30, 1969 from the Goodyear Store in Akron as alleged, the transaction would have had to have been completed without it ever having been recorded—on an invoice of any kind—contrary to the standard practice followed by the store personnel. Given the significant role played by the sales invoice, both for internal accounting and customer warranty, this occurrence seems highly unlikely.

It is settled that a plaintiff may not represent a class of which he himself is not

a part, *Bailey v. Patterson*, 369 U.S. 31, 32–33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). The rationale behind such a rule has been articulated in many ways but is usually couched in terms of "adequacy of representation."

"Before one may successfully institutè a class action '[i]t is of course necessary generally that [he] be able to show injury to himself in order to entitle him to seek judicial relief' (citation omitted). A plaintiff who is unable to secure standing for himself is certainly not in a position to 'fairly insure the adequate representation' of those alleged to be similarly situated (citation omitted). In short, a predicate to appellee's right to represent a class is his eligibility to sue in his own right. What he may not achieve himself, he may not accomplish as a representative of a class." *Kauffman v. Dreyfus Fund Inc.*, 434 F.2d 727, 734 (3d Cir. 1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971).

*See also Kister v. Ohio Board of Regents*, 365 F.Supp. 27, 33 (S.D.Ohio 1973), *aff'd*, 414 U.S. 117, 94 S.Ct. 855, 38 L.Ed.2d 747 (1974).

■ An important corollary to the requirement that a purported class representative himself have standing to sue is that in an antitrust action he be able to prove individual damage as a result of the alleged violation.

"But it is not enough for recovery of damages to prove that an antitrust law was violated by the defendant (citation omitted). Rather, the rule is that damages may not be awarded to a litigant unless he also proves 'with a fair degree of certainty, the fact of damage and the causal connection between the antitrust violation and the injury.'" *Morning Pioneer Inc. v. Bismarck Tribune Co.*, 493 F.2d 383, 387 (8th Cir. 1974), *cert. denied*, 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974).

Thus, should plaintiff fail to establish himself as a member of the class he seeks to represent he would necessarily fail to establish injury in fact as a result of the alleged

monopolization or attempted monopolization of the replacement tire market by defendant.

■ In this regard, plaintiff would seek to impose upon defendant a negative burden of proof whereby defendant would have to come forward with affirmative evidence to rebut, and thereby defeat, plaintiff's class action allegations. Such position does violence to the applicable law.

"[A] class action does not exist merely because it is so designated by the pleadings. *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970). The plaintiff has the burden of proving that the action is appropriately a class action." *Rossin v. Southern Union Gas Co.*, 472 F.2d 707 (10th Cir. 1973).

*See also Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968).

Given the complex nature of most class actions and the expenditure of judicial resources incident to their administration it is not altogether surprising that courts have refused to grant class action certification absent a clear showing by plaintiff that the provisions of Rule 23 F.R.Civ.P. have been fully complied with.

"The machinery of the Rule, with its attendant expense, should not be brought into play unless initially plaintiff, who has the burden of proof, justifies its application." *Free World Foreign Cars, Inc. v. Alfa Romeo, S. p. A.*, 55 F.R.D. 26, 29 (S.D.N.Y.1972) (footnote omitted).

*See also Cash y. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970).

■ In the face of this avalanche of legal authority requiring a purported class representative to prove, and not merely allege, that he is a member of the class he seeks to represent plaintiff has requested that resolution of the issue be held in abeyance pending trial. This is clearly impermissible.

In *Zenith Vinyl Fabrics Corp. v. Ford Motor Co.*, 357 F.Supp. 133 (E.D.Mich.1973), *aff'd*. Civ. No. 73–1537 (6th Cir. June 5, 1974), *cert. denied*, 419 U.S. 967, 95 S.Ct. 231, 42 L.Ed.2d 183 (1974), plaintiff, in an antitrust action, sought to stave off a mo-

tion for summary judgment by repeating her conclusory allegations in an affidavit and stating that she would have evidence at trial sufficient to refute defendant's contentions. The court granted summary judgment for defendant since to rule otherwise "would amount to permitting the plaintiff to keep its case in court merely by swearing that it has a case," *Zenith Vinyl Fabrics Corp. supra* at 139.

Similarly, plaintiff may not maintain a class action merely by alleging that he is a member of the putative class. Neither may he preserve the question of his representative status until trial. Rule 23(c)(1) F.R. Civ.P. requires that class certification be determined "as soon as practicable after the commencement of an action brought as a class action." *See also Garrett v. City of Hamtramck*, 503 F.2d 1236 (6th Cir. 1974). To postpone a determination of the maintainability of this litigation as a class action would be "directly contrary to the command of subdivision (c)(1)." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974).

■ Thus, at the very least, there exists substantial doubt as to whether the named plaintiff is a member of the class he seeks to represent. This is a factor to be given considerable weight in any determination of class action status, *Al Barnett & Sons, Inc. v. Outboard Marine Corp.*, 64 F.R.D. 43, 53 (D.Del.1974).

II. *Plaintiff's Role as an Attorney for the Class*

It is clear from the depositions filed with the Court in this action that plaintiff has assumed a role beyond that of merely representing the putative class. Although separate counsel for plaintiff have made the only appearance of record on his behalf, plaintiff readily admits that he will be acting in a dual capacity—that of class representative and legal representative. The letter of agreement entered into by plaintiff and his counsel of record specifically provides for the rendering of legal services by plaintiff as well as the sharing of any attorney's fees awarded either by way of judg-

ment or settlement. Also incorporated into the letter of agreement is a formula for allocating the expenses incurred during the course of litigation. There is no doubt, nor can there be, that plaintiff has participated significantly in the prosecution of this action. It must therefore be determined whether this action, as a class action, will be allowed to go forward in this posture.

■ At the outset, it is important to note that "class action counsel possess in a very real sense, fiduciary obligations to those not before the court," *Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 832 (3d Cir. 1973). As a result, the adequacy of representation in a class action is subject to intense scrutiny, *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968); *Ott v. Speedwriting Publishing Co., Inc.*, 64 F.R.D. 13 (E.D.Tenn.1974).

The basic problem with the comingling of the roles of plaintiff and counsel has been succinctly set forth by Judge Friendly in a classic statement of "the facts of class action life," *Saylor v. Lindsley*, 456 F.2d 896, 901 (2d Cir. 1972).

"The plaintiff's financial interest is in his share of the total recovery less what may be awarded to counsel, *simpliciter;* counsel's financial interest is in the amount of the award to him less the time and effort needed to produce it. A relatively small settlement may well produce an allowance bearing a higher ratio to the cost of the work than a much larger recovery obtained only after extensive discovery, a long trial and an appeal. The risks in proceeding to trial vary even more essentially. For the plaintiff, a defendant's judgment may mean simply the defeat of an expectation, often of relatively small amount; for his lawyer it can mean the loss of years of costly effort by himself and his staff." *Saylor, supra* at 900–01.

This conflict of interest is further intensified when the potential award accruing to individual class members can best be described as negligible.

Plaintiff, in his amended complaint, concedes that the damage claims of the individ-

ual members of the putative class are "relatively miniscule." Defendant's calculation of plaintiff's damages, albeit speculative and self-serving, places the figure, even when trebled, at "something less than $9.75." By either account, the stake of the individual claimants is too insubstantial to warrant private antitrust litigation. Under those circumstances, a recent admonition of the Ninth Circuit Court of Appeals becomes particularly relevant:

"In view of the nonexistent, or miniscule, recoveries that are likely to accrue to the supposedly intended beneficiaries, it is not surprising that most of the named plaintiffs are attorneys acting as counsel for themselves. Considering that this action has been primarily generated and financially supported by the lawyers who possibly stand to realize astronomical fees, and not by the individuals whose potential claims in any event are *de minimis*, we find the Court's conclusion in *Berley v. Dreyfus Co.*, 43 F.R.D. 397, 398 (S.D.N.Y.1967) applicable here:

"'. . . we think that subparagraph (b)(3) read as a whole reflects a broad policy of economy in the use of society's difference-settling machinery. One method of achieving such economy is to avoid creating lawsuits where none previously existed. This is in part why "the extent and nature of any litigation . . . already commenced" is pertinent to the required finding. If a class of interested litigants is not already in existence the court should not go out of its way to create one without good reason.' (footnotes omitted)

"Whenever the principal, if not the only, beneficiaries to the class action are to be the attorneys for the plaintiffs and not the individual class members, a costly and time-consuming class action is hardly the superior method for resolving the dispute. See *Free World Foreign Cars, Inc. v. Alfa Romeo*, 55 F.R.D. 26 (S.D.N.Y.1972); *Cotchett v. Avis Rent A Car System, Inc.*, 56 F.R.D. 549 (S.D.N.Y.1972)." *In re Hotel Telephone Charges*, 500 F.2d 86, 91 (9th Cir. 1974).

Similarly in *Cotchett v. Avis Rent A Car System, Inc.*, 56 F.R.D. 549 (S.D.N.Y.1972) the Court denied class action certification because of the divergent and possibly antagonistic interests of plaintiff as class representative and plaintiff as co-counsel:

"The difficulty I have with this situation lies in the fact that the possible recovery of [plaintiff] as a member of the class is far exceeded by the financial interest [plaintiff] might have in the legal fees engendered by this lawsuit." *Cotchett, supra*, at 554.

The same inherent, irreconcilable conflict of interest was alluded to in *Graybeal v. American Savings & Loan Ass'n*, 59 F.R.D. 7 (D.D.C.1973).

"[Plaintiffs] have failed to demonstrate to the Court's satisfaction that they will fairly and adequately protect the interests of the class. Plaintiffs have placed themselves in the dual roles of attorneys for, and representatives of, the proposed class. These dual roles are inherently fraught with potential conflicts of interests. In any class action there is always the temptation for the attorney for the class to recommend settlement on terms less favorable to his clients because a large fee is part of the bargain. The impropriety of such a position is increased where, as here, the attorney is also the representative who brought the action on behalf of the class . . . ." *Graybeal, supra*, at 13–14.

*See also, Stull v. Pool*, 63 F.R.D. 702 (S.D.N.Y.1974); *See Shields v. Valley Nat'l Bank*, 56 F.R.D. 448 (D.Ariz.1972); *Kriger v. European Health Spa, Inc.*, 56 F.R.D. 104 (E.D.Wis.1972).

■ For the above reasons, and, in accordance with the weight of judicial authority, plaintiff, acting as both class representative and attorney for the class, cannot fairly and adequately protect the interests of the class.

### III. *Manageability of the Class*

The putative class, as defined in plaintiff's amended complaint, would appear to

number approximately 400,000 persons. The re-defined class, as delineated in plaintiff's proposed second amended complaint, would number approximately 3000 individuals. A reduction in the size of the class, however, does not necessarily render such a class manageable.

Plaintiff is essentially seeking damages made up of the difference between the "artificially high" price he and the other purported class members had to pay for tires and the "free market" price that would have prevailed absent defendant's allegedly unlawful conduct. The assessment of such damages, however, involves some highly individualistic determinations.

The Manager of defendant's Retail Operations Department, Mr. William J. O'Donnell, submitted an affidavit describing the sales and pricing practices with regard to the marketing of replacement tires. It is important to note that defendant markets a myriad of tire styles that vary in size and design and, as a result, in price. Thus, the computation of individual damages would necessitate ascertaining the precise type of tire purchased by each individual class member. This could be accomplished by reviewing approximately 25,000 sales documents, assuming the smaller class, numbering 3000, were eventually certified. This, however, would not end the inquiry.

According to Mr. O'Donnell, each tire style does, in fact, have a fixed, suggested retail price. But such price is not necessarily the one at which the tire is sold. Entering into the computation are such factors as promotional sales, trade in on old tires, discounts, and the purchaser's innate bargaining ability. Thus, on any given day, any and all of the above variables may have come into play in determining what price an individual consumer may have paid for a specific model of tire. As a result, each and every transaction would have to be examined to determine whether the ultimate purchase price paid fell above, below, or at the "free market price," assuming such a figure can be established by plaintiff. Simply stated, this is not the stuff of which class actions are made. Contrary to plaintiff's belief, establishing damages is not "merely a matter of determining which members of the plaintiff class were charged . . . published prices." (second amended complaint at 12).

"[A] realistic measure of damages would necessarily have to take into consideration such variables as the individual's bargaining position, the willingness or unwillingness of each individual dealer or salesman to grant a discount from the suggested retail price, and market conditions which would no doubt vary substantially during the period of time involved in this law-suit." *Ralston v. Volkswagenwerk, A.G.*, 61 F.R.D. 427, 432 (W.D.Mo. 1973).

Nor can such problems in ascertaining individual damages be overcome by utilizing a standard formula or system of averaging:

"One basic admonition of Eisen III should be reiterated: 'Amended Rule 23 was not intended to affect substantive rights of the parties to any litigation.' If a class action were declared the members of the class would be parties whose rights would be directly affected by the action. In the absence of agreement of all of them, it is unacceptable to utilize an average or formula damage figure to determine the damages of each individual member of the class.

". . . I can find nothing to indicate that Rule 23 has abrogated the traditional means of measuring individual damages. If damages were to be awarded in this action, they should not be based on speculation or a system of averaging. Rather, the compensation due each individual member of the class must necessarily reflect the damages actually suffered by that party. Any individual member of the class should have the right to come forward with evidence which could indicate the extent of the discount which he may have been granted had a free market existed, and thus show the amount of his damage. . . . A recognition that each member of the class would have a right to come into court and give evidence raises staggering problems

of logistics. Manageability could not be assured, or even predicted. To afford manageability by impinging upon substantial rights—or duties—to present individualized evidence is not an acceptable goal of a class action." *Id.*

■ It is therefore clear that there are present in this action at least three factors that militate against class certification: substantial doubt as to plaintiff's membership in the class, plaintiff's dual capacity as representative of, and attorney for the class, and individual issues and concomitant unmanageability with regard to damages. While it is not necessary to decide whether any one of these factors, standing alone, might require denial of class action status, this litigation cannot proceed as a class action in the presence of all of them.

■ Plaintiff's proposed second amended complaint cures none of these defects in the class action allegations. Therefore, should he seek to pursue this action as an individual plaintiff he is free to do so through the vehicle of his second amended complaint, leave being hereby granted for its filing. It is doubtful, however, that plaintiff will continue on his present course in the absence of class certification, which is hereby denied. Lest there be any doubt, denial of class certification effectively sounds the "death knell" of the instant action within the meaning of the rule enunciated in *Eisen v. Carlisle & Jacquelin*, 370 F.2d 119 (2nd Cir. 1966), *cert. denied*, 386 U.S. 1035, 87 S.Ct. 1487, 18 L.Ed.2d 598 (1967). The amount of individual damages potentially recoverable in this action is so minute as to effectively foreclose any possibility of private litigation. For this reason it is unnecessary to reach the merits of defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

IT IS SO ORDERED.