[Civ. No. 45210. First Dist., Div. Three. May 18, 1982.]

CHARLENE P. ROSACK, Plaintiff and Appellant, v.
VOLVO OF AMERICA CORPORATION et al., Defendants and
Respondents.

COUNSEL

Joseph W. Cotchett, Susan Illston, David M. McKim, Cotchett, Hutchinson & Dyer, Cotchett, Dyer & Illston, Harold C. Wright, Ernest Pierucci, Robert E. Cartwright, Michael B. Moore and Cartwright, Sucherman, Slobodin & Fowler for Plaintiff and Appellant.

Paul, Hastings, Janofsky & Walker, Daniel H. Williams III, Douglas C. Conroy, Robert S. Span, Ropers, Majeski, Kohn, Bentley & Wagner and Walter C. Kohn for Defendants and Respondents.

OPINION

**BARRY-DEAL, J.**—Appellant, Charlene P. Rosack, appeals from the trial court's order dismissing the class action after denial of her motion for class certification in her antitrust suit against Volvo[1] for treble damages for violation of the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.). The dismissal was operative only against the class and not against the named plaintiff, Charlene P. Rosack, purporting to represent the class.

The parties raise a number of issues: (1) Is the denial of class certification an appealable order? (2) Do common issues of law or fact predominate, and specifically is the "fact of injury" to each member of the class capable of generalized as opposed to individualized proof? (3) Is the class action unmanageable? and (4) is appellant typical of the class she purports to represent?

## 1. Statement of Facts

Appellant filed suit on March 12, 1976, on behalf of herself and a class of persons[2] representing California retail automobile purchasers

---

[1] The defendants are Aktiebolaget Volvo, a Swedish corporation (A.B. Volvo), Volvo of America Corporation, a Delaware corporation, and Volvo Western Distributing, Inc., which was merged into Volvo of America Corporation on January 1, 1976, and ceased to exist as a separate entity. For convenience, the defendants will be referred to as "Volvo."

[2] A class action is authorized under Code of Civil Procedure section 382, which provides in part: "... and when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

between 1967 and 1976 against the manufacturer of Volvo automobiles and its United States distributors. Appellant alleges a vertical retail price management scheme whereby Volvo coerced its dealers into giving little or no discount from the "Monroney" automobile sticker price,[3] thus conspiring to artificially maintain the price of Volvo automobiles above free competitive levels in violation of California's antitrust legislation, the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.). The Volvo dealers, although alleged to be part of the conspiracy, are not named defendants in this action. The record does not reflect the number of dealers involved; 48 dealers throughout California filed affidavits disclaiming any part in a conspiracy with Volvo.

The complaint originally included an alleged improper tie-in of Volvo-made parts and accessories to the purchase of a Volvo automobile; defendants' demurrer to this cause of action was sustained without leave to amend. The year 1972 was set as the cutoff date for the statute of limitations. Purchasers of parts (independent of new car purchasers) and lessees were eliminated as members of the proposed class. Motions to quash by the parent company, A.B. Volvo, and by Volvo of America for lack of jurisdiction were denied.[4]

Volvo removed the case to the United States District Court for the Northern District of California; appellant moved to have the case remanded to the superior court. The United States Supreme Court ultimately ordered the case remanded to the superior court on October 19, 1976. (*Rosack v. Volvo of America Corp.* (N.D.Cal. 1976) 421 F.Supp. 933; *Volvo of America Corp.* v. *Schwarzer* (1976) 429 U.S. 1331 [50 L.Ed.2d 273, 97 S.Ct. 284].)

Appellant's motion for certification of the class and numerous opposing motions of respondents relating to class certification were consolidated for hearing in February 1978. On May 22, 1978, the court

---

[3]The automobile sticker price is a federally required suggested retail price, which must be affixed to the vehicle by the manufacturer, in addition to various other label information. (15 U.S.C. § 1231 et seq.)

[4]San Mateo County Superior Court rule XXVI sets out procedures for pretrial conferences and evidentiary hearings to resolve preliminary issues in class action suits brought under Code of Civil Procedure section 382 or under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.). These rules are patterned after the Los Angeles County Superior Court Class Action Manual (rules 401 to 470) and rule 23 of Federal Rules of Civil Procedure. In its memorandum of decision, the court indicated that a "number of informal conferences and pre-trial hearings, over a protracted period of time, have taken place in accord with the rules."

filed a memorandum of decision denying appellant's motion. The class allegations were dismissed, and a final order dismissing the class action was entered on June 21, 1978.

In its memorandum of decision, the trial court considered the central issue to be whether common questions of law or fact predominated over individual issues. The court was satisfied that existence of a conspiracy to fix prices, and that prices were in fact fixed, could be proved on a class basis. The court was unconvinced, however, that "injury" to the class members could be shown on a common basis, i.e., that each member of the class purchased at prices which were higher as a result of the price-fixing conspiracy. Additionally, the court found that class proof of injury in this case would be unmanageable and that the named plaintiff had not shown that she was representative of the purported class. Appellant having failed to carry her burden of establishing a community of interest as a matter of fact and by a preponderance of the evidence, the trial court denied appellant's motion for certification.

## 2. *Appellate Review*

Respondents claim that there is disagreement among California authorities on whether an order denying class certification is appealable under the requirement of Code of Civil Procedure section 904.1 (formerly § 963) providing in essence that an appeal may be taken only from a final judgment. They point out that the "California Supreme Court has . . . stated that federal cases interpreting Rule 23 of the Federal Rules of Civil Procedure are persuasive in California class action cases" and urge us to follow the recent United States Supreme Court decision, *Coopers & Lybrand* v. *Livesay* (1978) 437 U.S. 463 [57 L.Ed.2d 351, 98 S.Ct. 2454], holding that an order denying class certification is not appealable.[5]

California appellate courts have generally granted review of an intermediate order relating to class certification, although the procedures for seeking review have varied and the opinions have presented seemingly inconsistent views. Most of the earlier cases reached the appellate court by writ or appeal at the pleading stage after a demurrer to the class action was sustained or a motion to strike the class allegations was granted. (See, e.g., *Weaver* v. *Pasadena Tournament of Roses* (1948)

---

[5]See discussion under *Standard of Review, infra.*

32 Cal.2d 833 [198 P.2d 514] [writ—no discussion of the right to review]; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732] [appeal].) In 1971 the California Supreme Court in *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 820-821 [94 Cal.Rptr. 796, 484 P.2d 964], suggested that trial courts utilize the procedural provisions of the Consumers Legal Remedies Act (Civ. Code, § 1780 et seq.), which provides for a hearing, upon notice and motion, supported by affidavits, to determine if a class action is proper. Since that time, the majority of cases have reached the appellate court via a direct appeal from the intermediate order on certification of the class or an extraordinary writ seeking to compel the trial court to vacate or grant an order for certification.[6]

Cases holding that an order denying class certification is appealable stem from *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695. In *Daar* the trial court, after determining that plaintiff could not maintain a class action, sustained defendant's demurrer without leave to amend and transferred plaintiff's individual action to the municipal court. The Supreme Court held that even though an order sustaining a demurrer was not a final judgment and was nonappealable, the effect of the transfer was a determination that the complaint as a class action was legally insufficient and was "tantamount to a dismissal of the action as to all members of the class other than plaintiff." (*Id.* at p. 699.) Thus the legal effect of the order was that of a final judgment, and an appeal would lie. (See, e.g., *Collins* v. *Rocha* (1972) 7 Cal.3d 232 [102 Cal.Rptr. 1, 497 P.2d 225] [no discussion]; *Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.* (1974) 37 Cal.App.3d 193 [112 Cal.Rptr. 144]; *Hamwi* v. *Citinational-Buckeye Inv. Co.* (1977) 72 Cal.App.3d 462 [140 Cal.Rptr. 215]; *Morrissey* v. *City and County of San Francisco* (1977) 75 Cal.App.3d 903 [142 Cal.Rptr. 527].) Unlike *Petherbridge, Hamwi* and *Morrissey, supra,* where the plaintiff's individual action remained viable in the superior court, in *Anthony* v. *General Motors Corp.* (1973) 33 Cal.App.3d 699 [109 Cal.Rptr. 254], the plaintiffs refused to amend their complaint to state individual causes of action, and an appeal was properly taken from the judgment of dismissal of the action.

---

[6]In *Wechsler* v. *Laskey-Weil, Inc.* (1974) 42 Cal.App.3d 728 [117 Cal.Rptr. 237] the appellate court, Second District, considered an appeal from an order sustaining a demurrer to class action allegations and reversed the order, noting that the Los Angeles County Superior Court had adopted a manual which requires pretrial hearings in class action suits to determine class issues.

Cases holding that an appeal will not lie from an order on class certification when the order disposes of less than all the causes of action between the parties rely on *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800. In *Vasquez* the demurrer to plaintiffs' first cause of action, a class action for fraud, was sustained as to the class, but the demurrer to plaintiffs' second cause of action, a class action charging violation of the Unruh Act (Civ. Code, § 1801 et seq.), was overruled. Plaintiffs sought a writ of mandate; defendants asserted that plaintiffs had an adequate remedy by appeal. The Supreme Court, affirming that an appeal under these circumstances "would violate the rule that an appeal may be taken only from a final judgment," concluded "that since plaintiffs cannot appeal from the order which bars a substantial portion of their cause from being heard on the merits, their petition for writ of mandate deserves consideration." (*Vasquez* v. *Superior Court, supra,* 4 Cal.3d at pp. 806-807; see e.g., *Petherbridge* v. *Prudential Sav. & Loan Assn.* (1978) 79 Cal.App.3d 509, 513 [145 Cal.Rptr. 87] [order refusing certification not appealable, but reviewable on appeal from judgment on plaintiff's individual action].)

Since *Vasquez,* review of an intermediate order on class certification has most frequently been through use of an extraordinary writ. (See, e.g., *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223] [writ granted and trial court ordered to decertify class]; *Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355 [134 Cal.Rptr. 388, 556 P.2d 750] [writ denied; trial court did not abuse discretion in certifying class]; *Blue Chip Stamps* v. *Superior Court* (1976) 18 Cal.3d 381 [134 Cal.Rptr. 393, 556 P.2d 755] [writ granted and trial court ordered to dismiss class action portion of case], but see dis. opn. of Mosk, J., at p. 389.)

From our review of the statute and cases, we conclude that an appeal from an intermediate order on class certification violates the "final judgment rule" set forth in Code of Civil Procedure section 904.1 unless the order disposes of the entire action. ■ A party seeking an earlier appellate review of an order on class certification must rely on a writ of mandate as provided in Code of Civil Procedure sections 1085 and 1086. We caution, however, as did the court in *Hogya* v. *Superior Court* (1977) 75 Cal.App.3d 122 [142 Cal.Rptr. 325], that "willingness to consider the denial [or granting] of class certification before trial . . . should not be construed as a *right* to review of such an order in every case." (*Id.,* at p. 132; italics in original.) The general principles thoroughly discussed in *Hogya* require "an individual determination in each

case, upon examination of both facts and issues, whether review by use of prerogative writs should be afforded." (*Ibid.*)

■ At this juncture, we could dismiss the appeal and thereby not reach the merits (or perhaps merely postpone reaching the merits) of the appeal. We decline, however, to do so. Appellant has justifiably relied on persuasive authority for filing an appeal rather than seeking a writ of mandate, and in the interests of justice she is entitled to have the issues considered on their merits. Accordingly, we shall treat the appeal as a writ of mandate and proceed on that basis. (See *Barnes* v. *Molino* (1980) 103 Cal.App.3d 46, 50-51 [162 Cal.Rptr. 786]; but see *DeGrandchamp* v. *Texaco, Inc.* (1979) 100 Cal.App.3d 424, 437 [160 Cal.Rptr. 899].)

### 3. *Standard of Review*

■ "The trial court is vested with discretion to determine whether the plaintiff has sustained [her] burden of establishing the factual predicate for class action treatment. So long as that court applies proper criteria and its action is founded on a rational basis, its ruling must be upheld. (*Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355, 361 ....)" (*Hamwi* v. *Citinational-Buckeye Inv. Co., supra,* 72 Cal.App.3d 462, 472; cf. *Blue Chip Stamps* v. *Superior Court, supra,* 18 Cal.3d 381, 389-394, dis. opn. of Mosk, J.; see generally Witkin, Cal. Procedure (2d ed., 1981 supp. to vol. 5) Extraordinary Writs, § 106, pp. 137-138.)

■ In reviewing the trial court's order, we are mindful that the California Supreme Court has encouraged the trial courts to utilize the procedural provisions set forth in Civil Code section 1781, subdivision (c), of the Consumers Legal Remedies Act and in rule 23, Federal Rules of Civil Procedure.[7] (See *Vasquez* v. *Superior Court, supra,* 4 Cal.3d 800, 820-821.) Although federal cases interpreting rule 23 are persuasive, they are not binding on the state courts absent the impairment of a constitutional right. (See *Cartt* v. *Superior Court* (1975) 50 Cal.App.3d 960, 968 [124 Cal.Rptr. 376].)

---

[7]Rule 23, Federal Rules of Civil Procedure, provides in part: "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impractical, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of

### 4. The Predominance of Common Questions of Law or Fact

■ The predominance of common issues requirement adopted by rule XXVI(B)(1)(b) of the San Mateo Superior Court local rules governing class actions is substantially that of Federal Rules of Civil Procedure, rule 23(b)(3). In the instant case, the question of whether common issues of fact or law predominate over individual issues turns on an interpretation of substantive issues of antitrust law. ■ Federal cases interpreting the Sherman and Clayton Acts are applicable to the interpretation of California's antitrust legislation, the Cartwright Act. (*Mailand* v. *Burckle* (1978) 20 Cal.3d 367, 376 [143 Cal.Rptr. 1, 572 P.2d 1142]; *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 315 [70 Cal.Rptr. 849, 444 P.2d 481].)

Certain practices in violation of the antitrust laws are deemed per se violations. Price fixing is such a practice unlawful per se under section 1 of the Sherman Act. (*U. S.* v. *Socony-Vacuum Oil Co.* (1940) 310 U.S. 150, 223 [84 L.Ed. 1129, 1168, 60 S.Ct. 811].) Proof of a violation requires only evidence of a conspiracy among defendants to fix prices; no defense or justification is recognized. "Whatever economic justification particular price-fixing agreements may be thought to have, the law does not permit an inquiry into their reasonableness. They are all banned because of their actual or potential threat to the central nervous system of the economy. [Citation.]" (*Id.* at p. 226, fn. 59 [84 L.Ed. at p. 1169].) It is no defense that the price fixed was a "reasonable price" (*United States* v. *Trenton Potteries* (1927) 273 U.S. 392, 397-398 [71 L.Ed. 700, 705-706, 47 S.Ct. 377, 50 A.L.R. 989]); it is not necessary to show an actual effect on prices (*U.S.* v. *Socony-Vacuum Oil Co., supra*, 310 U.S. at pp. 225-226, fn. 59 [84 L.Ed. at pp. 1169-1170]).

In addition to a violation of the Sherman Act, civil liability under section 4 of the Clayton Act requires proof by the plaintiff that the antitrust violation caused him or her some injury.[8] To succeed in a pri-

---

the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: ... [¶] (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy...."

[8]Based on section 4 of the Clayton Act, California Business and Professions Code section 16750, subdivision (a), provides in part that "Any person who is injured in his

vate antitrust action plaintiffs must prove (1) a conspiracy to fix prices in violation of the antitrust laws, (2) that prices were fixed pursuant thereto, and (3) that as a result of the conspiracy plaintiff purchased products at prices which were higher than they should have been. (*Philadelphia Electric Co.* v. *Anaconda American Brass Co.* (E.D.Pa. 1968) 43 F.R.D. 452, 457.)

■ The basic considerations applicable to class certification have been summarized: "Liability in an antitrust action requires proof of two sets of facts: (1) an antitrust violation and (2) a resultant injury to plaintiffs. This latter requirement is also known as 'impact,' 'causation,' 'fact of damage,' and 'fact of injury.' If plaintiffs have stated claims of illegality and impact which can be proved predominantly with facts applicable to the class as a whole, rather than by a series of facts relevant to only individual or small groups of plaintiffs, then prosecution of this case as a class action is appropriate and desirable. [Citation.] If class-wide proof of illegality and impact is not possible, the class must be decertified." (*Presidio Golf Club* v. *National Linen Supply Corp.* (N.D.Cal. 1976) 1976-2 Trade Cases ¶ 61,221, pp. 70,627, 70,629.)

### Conspiracy

■ There is no contention here that proof of the conspiracy and its implementation are not common questions of law and fact. The existence of the price-fixing conspiracy is the predominant common issue determinative of liability to all class members. Proof of a conspiracy to fix prices establishes a per se violation of the antitrust laws. Violation as to each class plaintiff will be proved with facts of the same conspiracy. (See *In re Sugar Industry Antitrust Litigation* (E.D.Pa. 1976) 73 F.R.D. 322, 345; *Presidio Golf Club* v. *National Linen Supply Corp., supra,* 1976-2 Trade Cases ¶ 61,221, at p. 70,630.)

---

[or her] business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor in any court having jurisdiction ... without respect to the amount in controversy, and to recover three times the damages sustained by him [or her], and shall be awarded a reasonable attorneys' fee together with the costs of suit. [¶] Such action may be brought by any person who is injured in his [or her] business or property by reason of anything forbidden or declared unlawful by this chapter, regardless of whether such injured person dealt directly or indirectly with the defendant...." In 1978 the second paragraph above was added. Section 2 of Statutes of 1978, chapter 536, page 1696, provided: "The amendment of this section at the 1978 ... Session of the Legislature does not constitute a change in, but is declaratory of, the existing law."

## Impact

■ Proof of fact of injury (impact) as a common issue has been far more troublesome to the courts than has proof of the violation. A dominant approach has emerged as illustrated in the decision in *In re Master Key Antitrust Litigation* (D.Conn. 1975) 70 F.R.D. 23, appeal dismissed (2d Cir. 1975) 528 F.2d 5. The court addressed the requirements of section 4 of the Clayton Act and rule 23, Federal Rules of Civil Procedure, without unduly burdening parties seeking certification: "[i]f the plaintiffs introduce proof ... at the liability stage that they bought master key systems and that the defendants engaged in a pervasive nationwide course of action that had the effect of stabilizing prices at supracompetitive levels, the jury may conclude that the defendants' conduct caused injury to each plaintiff." (*Id.*, at p. 26, fn. 3.)

"Under this approach a jury can *infer* the fact of injury when a conspiracy to fix prices has been established and plaintiffs have established that they purchased the affected goods or services. This inference eliminates the need for each class member to prove individually the consequences of the defendants' actions to him or her. Accordingly, impact can be treated as a common question for certification purposes." (See Note, *Substantive Policies and Procedural Decisions: An Approach to Certifying Rule 23(b)(3) Antitrust Class Actions* (1979) 31 Hastings L.J. 491, 503.)

Other cases have used this approach, which we think is sound. (See, e.g., *Bogosian* v. *Gulf Oil Corp.* (3d Cir. 1977) 561 F.2d 434, 455, cert. den., 434 U.S. 1086 [55 L.Ed.2d 791, 98 S.Ct. 1280]; *Hedges Enterprises, Inc.* v. *Continental Group* (E.D.Pa. 1979) 81 F.R.D. 461, 475; *Presidio Golf Club* v. *National Linen Supply Corp., supra*, 1976-2 Trade Cases ¶ 61,221, p. 70,630; *Sugar Industry* (N.D.Cal. 1976) 1977-1 Trade Cases [¶] 61,373, pp. 71,319, 71,336, affd., *In re Sugar Antritrust Litigation* (9th Cir. 1977) 559 F.2d 481; *In re Sugar Industry Antitrust Litigation, supra*, 73 F.R.D. 322, 346; *In re Master Key Antitrust Litigation, supra*, 70 F.R.D. 23, 26, fn. 3; *In re Plywood Anti-trust Litigation* (E.D.La. 1976) 76 F.R.D. 570, 584; see also *In re Folding Carton Antitrust Litigation* (N.D.Ill. 1977) 75 F.R.D. 727, 734 (impact "presumed"].)

The courts have rejected the notion that each member of the purported class must prove that he or she absorbed at least some portion of the overcharges in order to establish liability. (*Presidio Golf Club* v. *Na-*

*tional Linen Supply Corp., supra*, 1976-2 Trade Cases ¶ 61,221, at p. 70,630; *Sugar Industry, supra*, 1977-1 Trade Cases ¶ 61,373, at p 71,336.) "[C]lass certification does not require that common questions be completely dispositive . . . as to all potential members of the class. [Citation.]" (*Id.*, at p. 71,335.) The fact that certain members of the class may not have been injured at all does not defeat class certification. (*In re Sugar Industry Antitrust Litigation, supra*, 73 F.R.D. 322, 347; *Presidio Golf Club* v. *National Linen Supply Corp., supra*, 1976-2 Trade Cases [¶] 61,221, at p. 70,630.)

### *Comparison of Liability and Damages*

■ Proof of impact at the liability phase is not the same as calculation of damages in the damages phase. It is sufficient to certify a class if impact as well as the conspiracy is capable of generalized proof. "The key issue in litigation of this type is the existence of a conspiracy and its effect on interstate commerce. Tactical problems inherent in arriving at a satisfactory calculation of damages must be considered, and given their appropriate weight, elsewhere in Rule 23." (*P.D.Q. Inc. of Miami* v. *Nissan Motor Corporation in U.S.A.* (S.D.Fla. 1973) 61 F.R.D. 372, 375.)

Manageability of the class with regard to proof of the amount of each class member's damages may present an independent ground for failure to certify the class. But this is not to be confused with the amenability of the causation or impact element to generalized as opposed to individualized proof. The complexity of the pricing scheme and the number of variables, although they may prove fatally unmanageable to damage calculation, will rarely inhibit generalized proof of impact. Where complexity is found to preclude class proof of impact, in fact, it is either because the complexity has also foreclosed generalized proof of the conspiracy itself, or because calculation of individual damages is deemed unmanageable. (See *State of Ala.* v. *Blue Bird Body Co., Inc.* (5th Cir. 1978) 573 F.2d 309, 321; *Windham* v. *American Brands, Inc.* (4th Cir. 1977) 565 F.2d 59, 65, 67, cert. den., 435 U.S. 968 [56 L.Ed.2d 58, 98 S.Ct. 1605].)

### *Market Complexity.*

Respondents contend that the California courts have always denied class certification where class members presented differing fact patterns. None of the cases cited by respondents addressed the unique

problems involved in antitrust class actions. We shall discuss later the federal cases cited by respondents to support their contentions.

Market variations have been examined in a number of federal cases: "[C]ontentions of infinite diversity of product, marketing practices, and pricing have been made in numerous cases and rejected. Courts have consistently found the conspiracy issue the overriding, predominant question. [Citation.]" (*In re Folding Carton Antitrust Litigation, supra*, 75 F.R.D. 727, 734.)

"It is true, as the defendants urge, that there may be local variations in marketing practices and the like. It is also true that in order for all the plaintiffs to recover it must be shown that the effects of the defendants' alleged anti-competitive behavior extended to all the areas in which plaintiffs made master key purchases. But these facts do not change the central and common element of these cases—the question whether the defendants acted in concert to decrease competition among them. If this element is shown, differences in the way the plan was manifested around the country are unimportant, except perhaps as they may affect the amounts of recovery different plaintiffs may obtain." (*In re Master Key Antitrust Litigation, supra*, 70 F.R.D. 23, 26.)

In *Sugar Industry* defendants claimed that, "Because the actual pricing of refined sugar and molasses fluctuated depending upon the time period, parties, localities, sugar products and distribution levels, . . . proof of a particular price change during a specific time period necessarily involves individual factual and legal issues." (*Sugar Industry, supra*, 1977-1 Trade Cases [¶] 61,373, at p. 71,334; see also *In re Sugar Industry Antitrust Litigation, supra*, 73 F.R.D. at pp. 342-343.) The court was unpersuaded, stating, at page 71,335: "In an unbroken line of decisions, courts have rejected arguments that various disparate facts relating to the claims of potential class members preclude a finding that common conspiracy issues predominate. For example, it has been recognized consistently that differences among potential class members concerning damages do not preclude class treatment so long as common questions regarding conspiracy and impact allegations predominate. [Citations.]"

A similar argument that the linen supply business was "characterized by an extremely intricate pricing scheme in which prices differ between different items, between different suppliers, and depend in significant part on the different supplier-customer relationships" was rejected by

the court in the *Presidio Golf Club* case. (*Presidio Golf Club* v. *National Linen Supply Corp., supra*, 1976-2 Trade Cases [¶] 61,221, at p. 70,629.)

"If the price structure in the industry is such that nationwide the conspiratorially affected prices at the wholesale level fluctuated within a range which, though different in different regions, was higher in all regions than the range which would have existed in all regions under competitive conditions, it would be clear that all members of the class suffered some damage, notwithstanding that there would be variations among all dealers as to the extent of their damage." (*Bogosian* v. *Gulf Oil Corp., supra*, 561 F.2d 434, 455.)

"The defendants point out that the products mentioned in the complaint include 'at least twelve separate groups of products which are separately priced and have distinct end uses'; that plaintiffs may have purchased like products from other manufacturers, at prices not shown to have been affected by the alleged conspiracy; that during the period covered by the alleged conspiracy there were dozens of price changes in each product-line; and that there were wide variations in methods of purchase and in prices actually paid. But these circumstances, it seems to me, demonstrate merely (1) the possible desirability of establishing sub-classes as the facts develop; (2) the likelihood that plaintiffs may be unable to prove all they claim; and (3) the fact that many of the issues relating to damages are individual rather than common to the class." (*Philadelphia Electric Co.* v. *Anaconda American Brass Co., supra*, 43 F.R.D. 452, 457.)

"In *City of New York* v. *General Motors Corp.*, 60 F.R.D. 393, 395 (S.D.N.Y. 1973), appeal dismissed, 501 F.2d 639 (2d Cir. 1974), the court stated: [¶] The defendant contends that differences among the class members regarding the manner of purchase and payment; the effect of the alleged monopolization upon physical, economic, environmental and sociological conditions; design specifications and the amounts paid make class action treatment inappropriate in this case. These factors at first blush, seem supportive of the defendant's contention, but on full consideration it becomes clear that each of these local differentiations relates solely or primarily to the question of damages and will be of little or no relevance in determining plaintiff's underlying claims." (*In re Sugar Industry Antitrust Litigation, supra*, 73 F.R.D. 322, 344.)

"In certifying a plaintiff class, the courts have found it appropriate to look past surface distinctions among the products purchased by class members or the marketing mechanisms involved when allegations of anti-competitive behavior embracing all of the various products and distribution patterns have been credibly pleaded. E.g., *In re Master Key Antitrust Litigation, supra* [70 F.R.D. 23]. Identical products, uniform prices, and unitary distribution patterns are not indispensable for class certification in this context." (*Shelter Realty Corp.* v. *Allied Maintenance Corp.* (S.D.N.Y. 1977) 75 F.R.D. 34, 37, app. dism. (2d Cir. 1978) 574 F.2d 656.)

### *Respondents' Federal Authorities*

The salient feature of respondents' briefs and the trial court's memorandum decision is confusion of proof of the fact of injury at the liability phase with calculation of individual damages at the damages phase.

This overlapping of the two concepts also appears in the language of several of the cases cited by respondents. Proof of the fact of injury on a generalized basis is sometimes referred to as "manageability" of proof of the fact of injury. (See *Windham* v. *American Brands, Inc., supra*, 565 F.2d 59, 65; *State of Ala.* v. *Blue Bird Body Co., Inc., supra*, 573 F.2d 309, 328.) The imprecise use of this terminology is the source of much of the confusion evident in respondents' papers and the trial court's decision.

Respondents rely upon *Holland* v. *Goodyear Tire & Rubber Co.* (N.D.Ohio 1975) 75 F.R.D. 743 [1975-2 Trade Cases ¶ 60,522, p. 67,313], claiming that in that case the complexity of pricing and sales prevented certification of the class, i.e., promotional sales, trade-ins on old tires, discounts, and individual purchaser negotiations. The *Holland* case is inapposite here. That case involved an alleged violation of section 2 of the Sherman Act, a monopolization of the replacement automobile tire market. There was no allegation of retail price maintenance. Unlike price fixing, monopolization is not a per se antitrust violation. Injury from the monopolization cannot be presumed. The monopolist may or may not charge excess prices to the retail customer. Discussion of proof of impact in a monopoly case is thus inapplicable to a price-fixing case.

Furthermore, there was no discussion of the impact requirement in the *Holland* case. Manageability of the class at the damages phase was

discussed, and the court determined that calculation of individual damages would pose unmanageable problems.

*Boshes* v. *General Motors Corporation* (N.D.Ill. 1973) 59 F.R.D. 589, was similarly decided on the ground of unmanageability of proof of damages. (*Id.*, at p. 599.) (The court stated, however, that "there is no longer much doubt that questions of liability can be separated from individual questions of damages." (*Ibid.*)

*Windham* v. *American Brands, Inc., supra,* 565 F.2d 59, "[p]rimarily, ... turned upon a finding of the unmanageability of the action as a class action ...." (*Id.*, at p. 65.) However, the *Windham* case frequently merges the issues of fact of injury and calculation of damages. At page 66, the court states that, "While a case may present a common question of violation, the issues of injury and damage ... are always strictly individualized. [Fn. omitted.]" If the court means by "injury," "fact of injury," such an interpretation literally applied would foreclose any class action because liability could never be proved on a class-wide basis. Shortly thereafter, the court states that there can be no generalized or class-wide *proof of damages*. It would appear that by "injury and damage" in the previous statement the court actually means "damages." The court speaks of "the necessity of individual *proof* and calculation" (*id.*, at p. 67, italics added), but its discussion in fact speaks to the manageability of the calculation of damages.

The court in *Windham* also found the conspiracy itself incapable of proof on a class basis. (*Ibid.*) The case involved several theories of illegal price fixing, as well as an allocation theory and the alleged monopoly. Some plaintiffs complained of injury by some of these practices, some by other practices. "Confronted with this congeries of both separate allegations of conspiracy violations and individualized claims of injury and damage, all intertwined, ..." (*ibid.*) the court declined to overrule the district judge's determination that class certification should be denied.

In the case of *State of Ala.* v. *Blue Bird Body Co., Inc., supra,* 573 F.2d 309, the court denied certification of a national class, but approved a statewide class. The case was brought against the manufacturers and distributors of school bus bodies, alleging that defendants fixed prices and conspired to monopolize. The appellate court disagreed with the trial court on the fundamental question of whether the national conspiracy was susceptible of generalized proof. (*Id.*, at p. 321.) Plaintiff's

evidence was found to be probative only of a possible Alabama conspiracy and did not establish a nationwide price-fixing scheme. In fact, it appeared at that point that plaintiffs planned to prove 50 different price-fixing conspiracies on a state-by-state basis. (*Id.*, at pp. 321, 323.)

The court in the *Blue Bird Body Co.* case admitted that, "If there was some uniformity in the quality and price of a school bus, then this requirement of 'impact' might cause few problems. But, given the diverse nature of the school bus market, we have difficulty envisioning how the plaintiffs can prove in a *manageable manner* that the conspiracy was indeed implemented in a particular geographical area, and that it did in fact cause damage." (*Id.*, at pp. 327-328, italics in original, fns. omitted.) At the statewide level, the court found that although many of the same problems existed, they occurred to a much lesser degree, and affirmed certification.

*Ralston v. Volkswagenwerk, A. G.* (W.D.Mo. 1973) 61 F.R.D. 427, is an eccentric case in this area and should not be looked to for guidance. The court in that case addressed the merits of the substantive issues, in effect requiring plaintiffs to prove at the class certification stage both the price-fixing element of their prima facie case and the precise method of calculating their damages. The case cites virtually no authority for this novel approach. There is none. The court drew as a conclusion from its determination that plaintiffs could not prove a conspiracy to fix prices, that there was no typicality; from the failure to demonstrate the precise method of damages calculation, it concluded that the class was unmanageable. The *Ralston* case has been criticized. "The premise of the *Ralston* opinion is doubtful—defendants do not have the right to require that plaintiffs in a class action present individualized proof with respect to the amount of damages." (Freeman, Current Issues in Class Action Litigation (1976) 70 F.R.D. 251, 266, fn. omitted.)

 The trial court in the instant case appears to have given great weight to the fact that purchasers in the retail automobile market frequently negotiate the price of their automobile. "In a market which is notorious for haggling and negotiations in purchasing, such as the retail automobile market, such a presumption of fact of injury cannot be maintained." The effectiveness of any negotiation by the purchaser must be seen as relative, depending on whether the negotiation commences from a price which is set by a competitive market or from an artificially inflated fixed price. The good negotiator in the fixed market

would presumably have gotten an even better "deal" in a competitive market. If base prices are raised, generalized injury results regardless of the purchaser's individualized negotiating abilities. The possibility that some members of the class may be injured to a lesser extent or even not at all will not, as we have seen, defeat class certification.

The trial court in the instant case found that proof of a conspiracy and of price fixing could be made on a classwide basis. Once a price-fixing conspiracy has been established, it follows that the class has been injured to some extent. At the preliminary class certification stage of this litigation, it was sufficient to show that plaintiffs represented a class of retail purchasers who bought their automobiles during a period of minimum retail price fixing.

The finding of the trial court that "impact" was not capable of generalized proof proceeds from a misunderstanding of the antitrust law in this area. Class certification should not have been denied on this ground.

### 5. *Superiority of Class Action*

Federal rule 23(b)(3) provides that a class action may be maintained if common questions of law or fact predominate *and* "a class action is superior to other available methods for the fair and efficient adjudication of the controversy...." Pertinent findings include "the difficulties likely to be encountered in the management of a class action."

Although appellants address the issue of the manageability of calculation of damages in this case, it is not clear that this was a ground on which the trial court denied certification. Citing *Boshes* v. *General Motors Corp., supra,* 59 F.R.D. 589, the trial judge stated that "Acknowledging that the 'amount' of damages each plaintiff sustained is not the issue, the complexities of 'proof' of damage in this case, involving possibly 50,000 purchasers, are, as in *Boshes*, 'overwhelming.'" Neither the trial court, nor *Boshes*, the case cited, is clear as to whether it is speaking of the difficulty of proof of the fact of damage, or manageability of the calculation of damages. Respondents assume the former, appellants the latter. If the issue is the former, we have previously disposed of it *ante*; if the latter, we must agree with appellant that this action does not appear to pose extraordinary difficulties with respect to proof of the amount of damages.

The *Boshes* case involved a class conservatively estimated at 30 to 40 million persons. (*Boshes* v. *General Motors Corp., supra*, 59 F.R.D. at p. 599.) "It would place an impossible burden upon any court to provide adequate notice to a proposed class of this size and thereafter to attempt to assemble and classify the transactional material required to identify the particular interest of millions of purchasers over this span of years. The mere prospect of these clerical and administrative problems would be enough to justify a determination of unmanageability. [Citations.]" (*Id.*, at pp. 599-600.) Even as to proof of impact in that case, the complexities seen by the court as fatal chiefly arose from the fact that wholesale price fixing by the manufacturer, General Motors, was alleged, which would require a showing by plaintiffs that retail dealers had passed on the overcharge to their customers. The court concluded that such a showing could not be made on a class basis. (*Id.*, at p. 600.)

The instant case involves a retail price maintenance scheme by one manufacturer, only six basic vehicle models, and a class of 50,000. *Boshes* can hardly be relied upon in coming to a determination as to the manageability of this class.

"[T]he federal courts have consistently and firmly adhered to the principle that once liability has been demonstrated, complexity or uncertainty as to the amount of damages will not preclude recovery. [Citations.]" (*In re Folding Carton Antitrust Litigation, supra*, 75 F.R.D. 727, 735.)

"[I]t has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate. [Citations.]" (*Bogosian* v. *Gulf Oil Corp., supra*, 561 F.2d 434, 456.)

"Defendants next question the court's ability to manage this suit if class action status is granted. This is an argument, necessarily somewhat conjectural in its nature, that has not gathered strength with reiteration. This court joins with the numerous judges and commentators who have deprecated the idea of blocking class suits on threshold predictions of unmanageability." (*Shelter Realty Corp.* v. *Allied Maintenance Corp., supra*, 75 F.R.D. 34, 38.)

As stated by one commentator: "The problems raised by damage calculations for numerous individual class members may be minimized by

separating liability and damage issues for trial. If defendant is found not liable, the court is then spared from becoming involved with discovery problems related to damage calculations . . . .

"The deferral of damage computation until after liability has been established has thus been recognized as an effective procedure by which to manage class actions. [Citations.] The procedure further serves the expeditious litigation of class suits because a trial unencumbered with the details of damage computations provides defendants with fewer opportunities for delay.

". . . . . . . . . . . ". . . .

"Separate trial of liability and damage issues would be especially appropriate in antitrust cases alleging *per se* violations of the antitrust laws. Since the jury would not have to consider the reasonableness of defendant's conduct, the liability issues could never be so interwoven with the question of damages as to be incapable of an independent submission to the trier of fact. *See Swofford v. B & W, Inc.*, 34 F.R.D. 15 (S.D.Tex. 1963), *aff'd.*, 336 F.2d 406, 415 (5th Cir. 1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 14 L.Ed.2d 557 (1965)." (Freeman, Current Issues in Class Action Litigation, *supra*, 70 F.R.D. 251, 267-268, fn. omitted.)

Various practical methods have been devised to expeditiously facilitate the calculation of individual damages, including bifurcation and the creation of subclasses. (See *Link* v. *Mercedes-Benz of N. Am., Inc.* (3d Cir. 1977) 550 F.2d 860, 864, cert. den., 431 U.S. 933 [53 L.Ed.2d 250, 97 S.Ct. 2641]; *In re Master Key Antitrust Litigation, supra*, 70 F.R.D. 23, 26; *Sugar Industry, supra*, 1977-1 Trade Cases ¶ 61,373, at p. 71,338; *Bogosian* v. *Gulf Oil Corp., supra*, 561 F.2d 434, 455.) In some cases certification of the class has been granted for purposes of liability only, reserving the right to reassess the possibility of subclasses for that purpose at a later date. (*P.D.Q. Inc. of Miami* v. *Nissan Motor Corporation in U.S.A., supra*, 61 F.R.D. 372, 381; see also *Bogosian* v. *Gulf Oil Corp., supra*, 561 F.2d at p. 456; *Vasquez* v. *Superior Court, supra*, 4 Cal.3d 800, 821.)

Speculative problems with regard to computation of damages should not have been fatal to class certification here. Any one of a number of procedures were available which would have allowed this action to pro-

ceed and which would have postponed a specific determination at this early stage of the precise formula for calculating individual damages.

### 6. *Is Appellant Typical of the Class She Purports to Represent?*

■ Finally, the trial court in this case found that plaintiff was not representative of the purported class, because her purchase at a price above the sticker price was dissimilar from that of another purchaser at approximately the same time of purchase. We defer to the trial court's factual observation, but fail to see the import thereof. Plaintiff alleges that she purchased a Volvo automobile at a point in time when the vehicle's price was controlled by the manufacturer and that she would represent a class of like purchasers. The fact that Volvos were being sold at that time at widely variant prices goes directly to the difficulty of plaintiff's task in proving the existence of a retail price-fixing scheme, but has no bearing on her ability to represent the class of purchasers. (See our previous discussion.)

The writ is granted, and the trial court is directed to vacate its order denying class certification and to enter an order granting class certification and to proceed in a manner consistent with the views expressed herein.[9]

Scott, Acting P. J., and Feinberg, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 25, 1982. Mosk, J., and Reynoso, J., were of the opinion that the petition should be granted.

---

[9]We have carefully considered our opinion after granting a petition for rehearing and conclude that our decision as originally filed is correct.