[L.A. No. 31679. Mar. 19, 1984.]

ELEANOR M. KAGAN, Plaintiff and Appellant, v.
GIBRALTAR SAVINGS AND LOAN ASSOCIATION et al.,
Defendants and Respondents.

584

COUNSEL

Levin, Ballin, Plotkin & Zimring, Jay Plotkin and Justin Graf for Plaintiff and Appellant.

Richard A. Elbrecht and Paul Griebel as Amici Curiae on behalf of Plaintiff and Appellant.

Gibson, Dunn & Crutcher, John L. Endicott, Martin C. Washton and Richard C. Cornish for Defendants and Respondents.

OPINION

**REYNOSO, J.**—May a consumer who notifies a prospective defendant of class grievances under the Consumer Legal Remedies Act and informally

obtains individual relief, subsequently bring a class action for damages on behalf of herself and as a representative of the class against the prospective defendant?

Plaintiff Eleanor M. Kagan brought this action individually and as a representative of a class against the Gibraltar Savings and Loan Association (Gibraltar) and various "Doe" defendants. She alleges that Gibraltar engaged in deceptive practices proscribed by the Consumer Legal Remedies Act in falsely advertising that customers would not be charged management fees in connection with Individual Retirement Accounts. Upon a motion by Gibraltar that the action lacked merit, the trial court determined that since the threatened fee had not been deducted from plaintiff's account she "ha[d] not suffered any injury or sustained any damage cognizable under the Consumer Legal Remedies Act." Accordingly, the trial court entered judgment in favor of Gibraltar.

Plaintiff contends that the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.) does not permit a prospective defendant to "pick off" prospective class representatives by offering them individual relief not made available to the entire class. As will appear below, we agree.

Plaintiff opened an Individual Retirement Account (IRA) with Gibraltar, through its Panorama City office, in April 1979. She chose Gibraltar because she had sought a financial institution that would not charge fees for administering the account (since her account would be rather small initially) and had seen newspaper advertisements indicating that this was Gibraltar's policy. Before opening the account, she also read a promotional brochure circulated by Gibraltar in its district offices which described its IRA plan and made the following representation: "No commissions. No establishment fees. No management fees."

In the course of opening the account, plaintiff noticed a reference in the agreement to a combined trustee and sponsorship fee of $7.50 annually, but was assured that it was Gibraltar's practice not to charge customers the fee and that no management fee would be charged. In November 1979, however, Gibraltar informed plaintiff by letter that a $7.50 trustee fee would be deducted from all IRA's. Seven dollars would be paid to Union Bank for administering the plan and 50 cents would be paid to the California Savings and Loan League for sponsoring it. The letter stated that the fee "supports the required legal, fiduciary and sponsorship functions which are necessary to maintain a current plan." It also noted that Gibraltar had absorbed the trustee fee during the "past year," but "increasing administrative costs" had caused it to change its policy.

Incensed, plaintiff telephoned Gibraltar. She advised a consumer affairs officer that she considered the proposed action inconsistent with Gibraltar's representations that no fees would be charged on the account and that she felt "defrauded." After looking into the matter, the officer reported to plaintiff that Gibraltar had decided to begin charging customers the trustee fee after surveying other institutions and discovering that all but three of them charged fees. When plaintiff spoke of consulting an attorney, the consumer affairs officer assertedly offered her the unsolicited advice that "it would not be worth [her] while."

In a letter dated December 19, 1979, plaintiff's husband warned Gibraltar's president that the company's "recently announced intention to *retroactively* charge trustee fees on IRA accounts conflicts with both written and oral representations made to myself, my wife and other IRA depositors." (Original italics.) The letter stated that if the company went through with this plan, "Gibraltar could be guilty of a major consumer fraud. . . ." The letter also stated that Gibraltar had presumably represented to consumers other than plaintiff that the $7.50 fee set forth in the agreement would not be operative.

A Gibraltar vice-president replied in a letter dated December 27, 1979, contending that "there is a misunderstanding in the payment of fees." The letter stated that "[t]he decision as to whether or not Gibraltar would pay the Trustee Fee has always been made from year to year, with no guarantee that this benefit would be offered for longer than one year at a time." Consequently, it advised that "[s]ince all accounts are to be treated in a like manner, this fee will be assessed to every IRA participant and will be deducted from their retirement account." Gibraltar subsequently charged plaintiff's husband a fee for 1979 and, later, for 1980.

On June 2, 1980, plaintiff and her husband, through counsel, sent a demand letter notifying Gibraltar that its conduct assertedly came within the proscription of section 1770[1] of the Consumer Legal Remedies Act (Act) defining deceptive business practices. Specifically, Gibraltar's conduct was said to be unlawful under section 1770, subdivision (i), which prohibits "[a]dvertising goods or services with intent not to sell them as advertised," and subdivision (q), which proscribes "[r]epresenting that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction," the alleged contingency in this case being Gibraltar's undisclosed annual administrative decision whether to impose management fees. The letter demanded that Gibraltar "rectify" these violations. Addi-

---

[1]Unless otherwise indicated, statutory references are to the Civil Code.

tionally, the letter demanded that the amounts deducted from plaintiff's and her husband's IRA's be restored, together with interest, and that Gibraltar "cease its misleading and false advertising practices." Pursuant to section 1782, a suit under the Act was threatened if the requested relief was not granted within 30 days.

In a letter dated June 24, 1980, within the prescribed 30-day period, Gibraltar promised to remove and discard from its branch offices the disputed promotional brochures, advised that no trustee fees had been deducted from plaintiff's account, and by check reimbursed plaintiff's husband the $15 in trustee fees which had been charged his account for the years 1979 and 1980.

On July 31, 1980, plaintiff filed the instant class action, on behalf of herself and those other persons who had been induced to establish IRA accounts through Gibraltar's alleged false advertising and misrepresentations. The complaint sought actual damages for the deducted fees, declaratory and injunctive relief preventing future deductions, $5 million in punitive damages and reasonable attorneys' fees and costs.

Subsequent discovery revealed that the promotional brochures were still displayed in at least one district office as recently as January 9, 1980, two months after plaintiff received notice that a charge would be imposed. Also revealed was an internal memorandum dated December 15, 1980, in which the manager of Gibraltar's Panorama City branch confirmed to the vice-president of Gibraltar that the trustee's fee had never been withdrawn from plaintiff's account and would not be withdrawn in the future.

Gibraltar then moved for a determination under section 1781, subdivision (c)(3), that the action lacked merit.[2] Gibraltar argued that plaintiff had suffered no damages cognizable under the Act as no fees were ever deducted from her account; that plaintiff was therefore not a member of the class she purported to represent; and, finally, that the $7.50 fee was not a management or establishment fee or a commission, but a special fee required to be remitted to other entities to maintain an IRA plan. On June 22, 1981, the trial court granted Gibraltar's motion on the ground that plaintiff "ha[d] not suffered any injury or sustained any damage cognizable under the Consumers Legal Remedies Act."

---

[2]The motion was originally denominated one for summary judgment (Code Civ. Proc., § 437c), but was allowed to be treated as a motion to determine that the action is without merit under section 1781, subdivision (c)(3) in light of the Act's explicit exclusion of summary judgment motions in actions commenced as class actions.

I

Plaintiff contends that the trial court's judgment erroneously allowed Gibraltar to oust her as a representative of the class of IRA depositors by the simple expedient of offering plaintiff and her husband individual relief. Plaintiff argues that this response was contrary to the requirement of section 1782, subdivision (c) that relief be given to the entire class in order to forestall or terminate a class suit. Gibraltar responds that plaintiff was precluded from bringing either an individual or class action since her account was never debited for the trustee's fee and hence she did not "suffer any damage" as required by section 1780. Gibraltar also renews the other arguments it presented to the trial court, that plaintiff is not a member of the class she seeks to represent and that the $7.50 fee is not a management or establishment fee or a commission.

An individual action may be brought under the Act pursuant to section 1780, subdivision (a), which provides that "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against such person . . . ." This provision further states that the consumer may seek to recover actual and punitive damages, injunctive relief, and "any other relief which the court deems proper." A class action may be brought pursuant to section 1781, subdivision (a), which provides that "[a]ny consumer entitled to bring an action under Section 1780 may, if the unlawful method, act, or practice has caused damage to other consumers similarly situated, bring an action on behalf of himself and such other consumers to recover damages or obtain other relief as provided for in Section 1780."

Thirty days or more prior to commencing an action for damages pursuant to either section 1780 or 1781, the consumer must notify the prospective defendant of the alleged violations of section 1770 and "[d]emand that such person correct, repair, replace or otherwise rectify the goods or services alleged to be in violation" thereof. (§ 1782, subd. (a)(2).) If, within this 30-day period, the prospective defendant corrects the alleged wrongs, or indicates that it will make such corrections within a reasonable time, no cause of action for damages will lie. This notice requirement need not be complied with in order to bring an action for injunctive relief. (§ 1782, subd. (d).)

Once a prospective defendant has received notice of alleged violations of section 1770, the extent of its ameliorative responsibilities differs considerably depending on whether the notification sets forth an individual or class grievance. Section 1782, subdivision (b) provides that "[e]xcept as provided

in subdivision (c)," an individual consumer cannot maintain an action for damages under section 1780 if, within 30 days after receipt of such notice, an appropriate remedy is given, or agreed to be given within a reasonable time, to the individual consumer. In contrast, subdivision (c) of section 1782 provides that a class action for damages may be maintained under section 1781 unless the prospective defendant shows that it has satisfied all of the following requirements: (1) identified or made a reasonable effort to identify all similarly situated consumers; (2) notified such consumers that upon their request it will provide them with an appropriate remedy; (3) provided, or within a reasonable time will provide, such relief; and (4) demonstrated that it has ceased, or within a reasonable time will cease, from engaging in the challenged conduct.

Thus, unlike the relatively simple resolution of individual grievances under section 1782, subdivision (b), subdivision (c) places extensive affirmative obligations on prospective defendants to identify and make whole the entire class of similarly situated consumers. This clear distinction between the responsibilities of a prospective defendant in responding to notifications of individual and class grievances, and the legislative preference for effecting informal class relief pursuant to subdivision (c), guide our following analysis.

Gibraltar contends that since the contested fee was not deducted from plaintiff's account, she no longer "suffers any damage" as required for bringing an individual action under section 1780. Therefore, Gibraltar argues, plaintiff is also precluded from bringing a class action under section 1781, which is expressly limited to "[a]ny consumer entitled to bring an action under Section 1780."

■ We agree that a consumer who has notified a prospective defendant of an individual grievance and has obtained his or her requested relief cannot subsequently bring either an individual or class action under the Act. However, this is not simply because the consumer no longer "suffers any damage" but because the prospective defendant has remedied the contested practices. Similarly, a prospective defendant receiving notice of a grievance which affects a class of consumers can avert a subsequent class action only by remedying the contested practices as to all affected consumers. The critical inquiry for determining whether a prospective defendant may be subject to an individual or class action is therefore whether the prospective defendant has made all remedies appropriate to the notice which it has received.

The demand letter sent Gibraltar by plaintiff and her husband requested that the "amounts deducted from their accounts for management fees be restored to their accounts, together with interest thereon." It also demanded

that Gibraltar "cease its misleading and false advertising practices" and "rectif[y] . . . [its] misconduct in falsely advertising its services, as well as conditioning the conferral of an economic benefit on a contingency which will occur subsequent to the consummation of a transaction." ▮ These demands put Gibraltar on notice that its alleged violations of section 1770 affected individuals in addition to plaintiff and her husband, and possibly a broad class of consumers. This notice was formalized by the December 19, 1979, letter from plaintiff's husband to the president of Gibraltar in which he stated: "I believe Gibraltar could be guilty of a major consumer fraud if it attempts to retroactively impose trustee fees." This letter also stated that the intended charge "conflicts with both written and oral representations which were made to myself, my wife and other IRA depositors" and that Gibraltar's oral representation that the fee provision in the agreement would not be operative was presumably "conveyed to anyone else who may have noticed the provision."

As these letters, taken together, put Gibraltar on notice that its alleged violations of section 1770 affected a class of consumers, Gibraltar was under an affirmative obligation to meet the conditions set forth in section 1782, subdivision (c) in order to avert a class action. There is no evidence to indicate that Gibraltar made an effort to meet any of these conditions. Gibraltar did not seek to identify consumers similarly situated to plaintiff, or notify such consumers that it would provide them relief upon their request. Nor did Gibraltar demonstrate that it had provided requested relief to any similarly situated consumers or that it would cease from engaging in the challenged conduct within a reasonable time. Gibraltar made no mention of stopping any of its allegedly false advertising other than withdrawing its promotional brochures. Nor did Gibraltar indicate that it would require its employees to stop making the allegedly misleading oral representations. Additionally, assuming plaintiff's husband is a member of the purported class of IRA depositors fraudulently induced to open IRAs with Gibraltar, Gibraltar's reimbursement to him of the $15 which it acknowledged deducting from his 1979 and 1980 accounts did not include any compensation for the requested interest thereon.

As Gibraltar did not meet the conditions of section 1782, subdivision (c) in response to notification of its alleged class violations of section 1770, a class action for damages pursuant to section 1781, subdivision (a) may lie. Moreover, as discussed below, plaintiff may properly bring the action on behalf of herself and as a representative of the class.

Section 1782, subdivision (b), states that "[e]xcept as provided in subdivision (c)," an individual action for damages will not lie under section 1780 if an appropriate individual remedy has been made. ▮ This exception

permits a consumer who has notified a prospective defendant of alleged class violations of section 1770 and obtained individual relief, to nonetheless bring a class action for damages under section 1781 if the prospective defendant has not met the conditions of section 1782, subdivision (c) by providing informal relief to the entire class. As noted *ante* the consumer may also seek injunctive relief which, under section 1782, subdivision (d), does not require compliance with the 30-day notice requirement.

■ We thus reject Gibraltar's effort to equate pecuniary loss with the standing requirement that a consumer "suffer[] any damage." As it is unlawful to engage in any of the deceptive business practices enumerated in section 1770, consumers have a corresponding legal right not to be subjected thereto. Accordingly, we interpret broadly the requirement of section 1780 that a consumer "suffer[] any damage" to include the infringement of any legal right as defined by section 1770.[3]

Gibraltar further asserts that permitting plaintiff to bring a class action is contrary to the well recognized rule that a class representative be a member of the class which she purports to represent (*La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 875 [97 Cal.Rptr. 849, 489 P.2d 1113]), in this case the putative class of persons, induced to establish IRA accounts through Gibraltar's alleged misrepresentations concerning the imposition of fees, whose accounts were actually debited the trustee fee. This argument ignores the clear legislative intent that prospective defendants under the Act not avert a class action by exempting or "picking off" prospective plaintiffs one-by-one through the provision of individual remedies.

Those responsible for drafting the Act specifically sought to preclude such "picking off" of prospective class action plaintiffs: "The most important point in connection with the settlement of class actions is that settlement with the named plaintiffs will not preclude them from further prosecuting the action on behalf of the remaining members of the class. Note that section 1782(c) precludes the further maintenance of the action only if *all* the described conditions are shown to exist. Those conditions require settlement with all reasonably identifiable members of the class. The term 'maintained' in section 1782 (c) was deliberately and carefully chosen just as the term 'commenced' was deliberately avoided. *The intent was to make certain that a person can commence a class action 30 days after he has made a demand on behalf of the class even if the merchant has offered to settle his particular claim in accordance with section 1782(b).* An action so commenced may

---

[3]Federal consumer statutes are in accord. See, e.g., 15 United States Code Annotated section 1640, which permits an individual or class action against "any creditor who fails to comply with any requirement imposed under this part . . . ."

not be maintained, however, if the conditions for settlement with the class have been met. It is evident that construction of section 1782(c) so as to preclude a person from maintaining any action if his particular claim had been settled would destroy class actions under the statute. That most certainly was not the intent of the legislature." (Italics added.) (Reed, *Legislating For The Consumer: An Insider's Analysis Of The Consumers Legal Remedies Act* (1971) 2 Pacific L.J. 1, 19.)

This result is consistent with this court's holding in *La Sala* v. *American Sav. & Loan Assn., supra,* 5 Cal.3d 864, decided before the effective date of the Act. In that case we held that a defendant's grant of individual relief to the named plaintiffs in a class action does not, in itself, render those plaintiffs unfit per se to represent the class. The defendant in *La Sala* had sought to avert a class action by waiving the acceleration clauses in deeds of trust executed by the named plaintiffs and defendant. We reasoned that "[i]f other borrowers bring a class action, [defendant] may again waive as to those representative borrowers, and again move to dismiss the action. Such a procedure could be followed ad infinitum for each successive group of representative plaintiffs. If defendant is permitted to succeed with such revolving door tactics, only members of the class who can afford to initiate or join litigation will obtain redress; relief for even a portion of the class would compel innumerable appearances by individual plaintiffs. Yet the function of the class action is to avoid the imposition of such burdens upon the class and upon the court. [Citation.] If we sanction [defendant's] tactic defendants can always defeat a class action by the kind of special treatment accorded plaintiffs here and thus deprive other members of the class of the benefits of the litigation and any notice of opportunity to enter into it." (*Id.,* at p. 873.)

■ Gibraltar alternatively contends that plaintiff should not be entitled to file a class action for damages under the Act because the demand letter sought and obtained restoration of the amounts deducted only from plaintiff's and her husband's accounts, and did not explicitly seek such relief on behalf of the class. Gibraltar argues that permitting plaintiff to commence such an action after receiving the relief which she and her husband requested in their letter contravenes the policy of the Act encouraging informal resolution of disputes prior to commencing suit.

■ While a class demand letter under the Act should set forth, as explicitly as possible, the objected-to practices, the relief requested, and the intent to file a class action should the letter's demands not be met, failure to specifically request all of the relief to which a class may be entitled should not preclude a later action so long as the essential notice function of section 1782, subdivision (a) is achieved. ■ In the present case, the demand

letter, together with the letter previously sent by plaintiff's husband, served this essential notice function by setting forth objected-to practices which indicated the necessity for class relief and stating an intent to file a lawsuit should the letter's demands not be met. The demand letter cannot be said to have been merely an individual complaint, but notice of an alleged course of conduct that was causing damage to many similarly situated consumers. We have already indicated that the demand letter's request that Gibraltar reimburse plaintiff's husband the amounts in trustee fees deducted from his IRA accounts constituted a request for relief on behalf of at least one member of the purported class. Had Gibraltar met its affirmative obligation to satisfy the conditions set forth in section 1782, subdivision (c), the policy of the Act encouraging the informal and voluntary correction of consumer complaints would have been met.

■ Accordingly, we hold that an individual consumer may bring a class action under section 1781, subdivision (a) if, pursuant to section 1782, subdivision (a), he or she has put the prospective defendant on notice that the alleged violations of section 1770 affect a class of consumers, and the prospective defendant has failed to correct or seek to correct such violations as to all similarly situated consumers pursuant to the conditions set forth in section 1782, subdivision (c). ■ These prerequisites for bringing a class action were met in the instant case.

■ Having determined that plaintiff may bring the instant class action under section 1781, subdivision (a), we nevertheless recognize that the question whether the remaining conditions for bringing a class action have been met pursuant to section 1781, subdivision (b), lies in the sound discretion of the trial court. (*Rosack* v. *Volvo of America Corp.* (1982) 131 Cal.App.3d 741, 750 [182 Cal.Rptr. 800].) Section 1781, subdivision (b) provides that the trial court "shall permit the suit to be maintained on behalf of all members of the represented class if all of the following conditions exist: [¶] (1) It is impracticable to bring all members of the class before the court. [¶] (2) The questions of law or fact common to the class are substantially similar and predominate over the questions affecting the individual members. [¶] (3) The claims or defenses of the representative plaintiffs are typical of the claims or defenses of the class. [¶] (4) The representative plaintiffs will fairly and adequately protect the interests of the class." We shall therefore remand this case to afford the trial court an opportunity to properly exercise its discretion under this statute.

■ We now hold only that Gibraltar's exemption of plaintiff from the imposition of the trustee fee does not render her unfit per se to represent the class. ■ In determining whether plaintiff's claims are typical of those of the class, and whether plaintiff can fairly and adequately protect

the class she seeks to represent, the trial court on remand "may take into account that the named plaintiff[] [has] already obtained [her] individual benefits from the action; plaintiffs who have nothing at stake often will not devote sufficient energy to the prosecution of the action; further, the receipt of benefits by the named plaintiffs may sometimes create a conflict of interest between the class and its would-be representatives. On the other hand, . . . the court may find that the named plaintiff[] will continue fairly to represent the class, and, therefore, permit [her] to continue the class litigation." (*La Sala* v. *American Sav. & Loan Assn., supra,* 5 Cal.3d 864, 871-872.)

We do note that plaintiff's claims appear to be typical of those of the putative class, and that the tenacity with which plaintiff has thus far pursued this matter is indicative that she has those qualities necessary to fairly and adequately protect the interests of that class. Moreover, plaintiff's demonstrated energy in pursuing this matter would appear to advance the primary purposes for maintaining a class action, by " 'eliminat[ing] the possibility of repetitious litigation and provid[ing] small claimants with a method of obtaining redress for claims which would otherwise be too small to warrant individual litigation.' " (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 469 [174 Cal.Rptr. 515, 629 P.2d 23], quoting *Eisen* v. *Carlisle & Jacquelin* (2d Cir. 1968) 391 F.2d 555, 560.) However, should the trial court conclude that plaintiff cannot suitably represent the class, it should afford her "the opportunity to amend [her] complaint, to redefine the class, or to add new individual plaintiffs, or both, in order to establish a suitable representative." (*La Sala* v. *American Sav. & Loan Assn., supra,* 5 Cal.3d 864, 872.) Following these procedures, if the court concludes that the action should be dismissed for lack of a suitable representative, it should first notify the members of the class. (*Id.,* at p. 874.)

## II

Finally, Gibraltar contends that the judgment in its favor can be upheld on the alternative ground, not reached by the trial court, that the record establishes beyond dispute that the trustee fee which Gibraltar elected to charge did not constitute a "management fee." Gibraltar's position, as set forth in an officer's declaration, is that, though it had previously elected to absorb the trustee fee, each such election was for the calendar year only, and this "had nothing to do" with the promise of no "management fees." It insists that no fee is charged for "management by Gibraltar," in contrast to the practice of competing retirement fund investment administrators, such as mutual funds, insurance companies, investment brokers and mortgage broker investment companies. On the other hand, Gibraltar concedes that plaintiff apparently misunderstood that it would continue to absorb the fees

for the lifetime of the account, and that its promotional brochure "may have contributed to plaintiff's confusion." Such "confusion" does not seem unreasonable in light of Gibraltar's acknowledgment that the trustee fee is paid to Union Bank for its "operation and administration of the Plan, including management and control of contributions as provided in the Plan, the computation of installment distributions and the preparation and filing of such reports, accounts and statements as are required under applicable law." In light of the brochure's evident potential to mislead consumers, it can hardly be said that no triable issue exists whether Gibraltar was guilty of false advertising prohibited by the Act.

The judgment is reversed and the cause is remanded to the trial court for proceedings consistent with the views expressed in this opinion.

Bird, C. J., Mosk, J., Broussard, J., and Grodin, J., concurred.

KAUS, J., Dissenting.—I agree with the majority that in light of the stark distinction between the requirements of subdivisions (b) and (c) of section 1782,[1] it is clear that the Legislature did not intend to permit a prospective defendant to derail a threatened class action by "picking off" named plaintiffs one-by-one through the provision of individual remedies to such plaintiffs. Thus, when a consumer complains about a widespread practice and notifies a prospective defendant that a "class" remedy is demanded, the Act must reasonably be construed to permit a defendant to avoid a subsequent class action only if it satisfies the requirements of subdivision (c).

Accordingly, if plaintiff had notified Gibraltar at the outset of her intention to seek class relief, I would agree with the majority that the trial court's dismissal of this class action would be inappropriate. As the facts recited by the majority indicate, however, when plaintiff notified Gibraltar of her demands, she did not suggest that she was seeking classwide monetary relief. Instead, she sought such relief only with respect to her own and her husband's accounts. Gibraltar responded by granting the very relief which plaintiff had requested. Under these circumstances, I believe that plaintiff is now barred from pursuing a class action for damages under the Act.

Elementary notions of fairness compel this result. It is clear, of course, that only the aggrieved consumer knows whether he or she intends to seek a monetary recovery only on his or her own behalf or additionally on behalf of the entire class. It is also clear that a prospective defendant's response to a demand for relief will invariably be influenced by the scope of the

---

[1]All section references are to the Civil Code. The Act refers to the Consumer Legal Remedies Act, codified at sections 1750 to 1784.

demand. A defendant may be much more willing to settle or remedy a small, individual claim, even if it has strong doubts as to its validity, than it would be to provide expensive, wide-ranging class relief. If consumers are authorized to pursue the approach which plaintiff followed in this case, they can routinely "sandbag" prospective defendants by first seeking and obtaining an individual recovery and only thereafter transforming their complaints into class actions. To my mind, section 1782, subdivisions (a), (b), and (c) must reasonably be construed to preclude a consumer who has demanded and has received individual relief from then instituting a class action for damages.

Accordingly, in light of the facts of this case, I would affirm the judgment of dismissal.

Richardson, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.