59 Cal.Rptr.3d 309 (2007)
150 Cal.App.4th 1136
Pamela MEYER et al., Plaintiffs and Appellants,
v.
SPRINT SPECTRUM L.P., Defendant and Respondent.
No. G037375.
Court of Appeal of California, Fourth District, Division Three.
May 16, 2007.
*311 Law Offices of Anthony A. Ferrigno, Anthony A. Ferrigno; Franklin & Franklin and J. David Franklin, San Diego, for Plaintiffs and Appellants.
Reed Smith, Michele Floyd and Raymond A. Cardozo, San Francisco, for Defendant and Respondent.

*310 OPINION
FYBEL, J.

Introduction
Plaintiffs Pamela Meyer and Timothy Phillips, subscribers to defendant Sprint Spectrum L.P.'s (Sprint) cellular telephone service, sued Sprint under the unfair competition law (Bus. & Prof.Code, § 17200 et seq.) (UCL) and the Consumers Legal Remedies Act (Civ.Code, § 1750 et seq.) (CLRA), and sought declaratory relief. Plaintiffs claimed Sprint improperly included certain illegal and unconscionable terms in its customer service agreement. Plaintiffs did not allege Sprint had asserted or threatened to assert those terms against them.
Sprint demurred to plaintiffs' fourth amended complaint, arguing they lacked standing to pursue their claims. The trial court sustained Sprint's demurrer without leave to amend. We affirm the judgment.
To assert a claim under the UCL, an individual plaintiff must have suffered an "injury in fact" and "lost money or property as a result of [the alleged] unfair competition." (Bus. & Prof.Code, § 17204.) We hold plaintiffs did not and cannot meet either prong of the two-part, statutory standing test. Plaintiffs did not allege they suffered an injury in fact by the mere inclusion of the challenged terms in the customer service agreement, and they did not allege inclusion of the challenged contract terms caused them to lose money or property.
We also hold plaintiffs' claim under the CLRA fails for lack of standing. To have standing to assert a claim under the CLRA, an individual plaintiff must be a "consumer who suffers any damage as a *312 result of an act declared unlawful by Civil Code section 1770. (Civ.Code, § 1780, subd. (a).) The inclusion of an unconscionable provision in a contract is an unlawful act. Id., § 1770, subd. (a)(19).) While plaintiffs do not have to allege a monetary loss to have standing under the CLRA, they must suffer some damage as a result of Sprint's conduct. As with the UCL claim, plaintiffs have failed to allege any damage caused by the inclusion of certain contract terms, and, therefore, plaintiffs lack standing to pursue a claim under the CLRA.
Finally, plaintiffs cannot maintain a claim for declaratory relief because there is no actual controversy between plaintiffs and Sprint. The challenged contract terms were not asserted against plaintiffs, and did not prevent plaintiffs from asserting their rights; thus, there is no live controversy.

Background
Susanne Ball sued Sprint on May 27, 2004, on behalf of the general public, for violation of the UCL. Following the enactment of Proposition 64, Ball, who was not a Sprint customer, withdrew from the litigation; Meyer and Phillips were substituted in as plaintiffs.
After two demurrers were sustained, plaintiffs filed a fourth amended complaint, which alleged three causes of action: violation of the UCL; violation of the CLRA; and for declaratory relief. The basis for each cause of action was plaintiffs' claim that Sprint's customer service agreement contained the following unconscionable and illegal provisions: (1) requirement that the parties submit disputes under the customer service agreement to binding arbitration pursuant to the rules of Judicial Arbitration and Mediation Services, National Arbitration Forum, or an organization chosen by the parties; (2) waiver of the right to resolve disputes through a jury trial; (3) waiver of class action in arbitration; (4) failure to provide for discovery before arbitration; (5) arbitration cost-splitting provision; (6) disclaimer of warranties and limitation of liability; (7) Sprint's ability to unilaterally change the terms of the customer service agreement; (8) 60-day limitation period for initiating billing disputes; and (9) a $150 early termination fee.
Sprint demurred to the fourth amended complaint, arguing plaintiffs lacked standing to assert any of the alleged causes of action.[1] The trial court issued a tentative ruling sustaining the demurrer without leave to amend. Because plaintiffs and Sprint both submitted on the tentative, it became the final ruling of the court. The ruling reads, in relevant part, "[p]laintiffs have not shown they were personally damaged or that the allegedly unconscionable or illegal provisions have been enforced against them." Plaintiffs did not request leave to amend from the trial court, and they do not argue on appeal that the trial court erred by denying leave to amend. Judgment was entered, and plaintiffs timely appealed.

Discussion

I.

Standard of Review
We review de novo an order sustaining a demurrer without leave to amend. (Bardin v. Daimlerchrysler Corp. (2006) 136 Cal.App.4th 1255, 1264, 39 Cal. Rptr.3d 634.) "`"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or *313 conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]'" (Zelig v. County of Los Angeles (2002) 27 Cal.4th 1112, 1126, 119 Cal.Rptr.2d 709, 45 P.3d 1171.)

II.

Plaintiffs do not have standing under the UCL.
The passage of Proposition 64 in November 2004 changed the standing requirements for a UCL claim. Business and Professions Code section 17204 (section 17204) now uses a two-prong test to determine the standing of a person other than the Attorney General, a district attorney, county counsel or city attorney who seeks to assert a claim under the UCL. Such a person must allege he or she (1) "suffered injury in fact" and (2) "lost money or property as a result of [the alleged] unfair competition." (§ 17204.) Few cases since Proposition 64's passage have directly addressed what constitutes injury in fact or loss of money as a result of unfair competition for purposes of determining standing. "In interpreting a voter initiative ..., we apply the same principles that govern statutory construction. [Citation.] Thus, `we turn first to the language of the statute, giving the words their ordinary meaning.' [Citation.] The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. [Citation.] When the language is ambiguous, `we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' [Citation.]" (People v. Rizo (2000) 22 Cal.4th 681, 685, 94 Cal.Rptr.2d 375, 996 P.2d 27.)
The ordinary meaning of the new language of section 17204, combined with its purpose as stated in Proposition 64, guides us to the conclusion that plaintiffs in this case lack standing to pursue their UCL claim.
An injury is "an act that damages, harms, or hurts: ... a violation of another's rights for which the law allows an action to recover damages or specific property or both: an actionable wrong." (Webster's 3d New Internat. Dict. (1993) p. 1164.)[2] An injury in fact is "[a]n actual or imminent invasion of a legally protected interest, in contrast to an invasion that is conjectural or hypothetical." (Black's Law Diet. (8th ed.2004) p. 801.) To lose is "to suffer deprivation of." (Webster's 3d New Internat. Diet., supra, at p. 1338.) A loss is "[a]n undesirable outcome of a risk; the disappearance or diminution of value, usu. in an unexpected or relatively unpredictable way." (Black's Law Diet., supra, at p. 963.)
The intent of the electorate in passing Proposition 64 and enacting the changes to the standing rules in section 17204 was unequivocally to narrow the category of persons who could sue businesses under the UCL. "In Proposition 64, as stated in the measure's preamble, the voters found and declared that the UCL's broad grant of standing had encouraged `[f]rivolous unfair competition lawsuits [that] clog our courts[,] cost taxpayers' and `threaten[ ] *314 the survival of small businesses (Prop.64, § 1, subd. (c) [`Findings and Declarations of Purpose'].) The former law, the voters determined, had been `misused by some private attorneys who' `[f]ile frivolous lawsuits as a means of generating attorney's fees without creating a corresponding public benefit,' `[f]ile lawsuits where no client has been injured in fact,' `[f]ile lawsuits for clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant,' and `[f]ile lawsuits on behalf of the general public without any accountability to the public and without adequate court supervision.' (Prop.64, § 1, subd. (b)(1)(4).) `[T]he intent of California voters in enacting' Proposition 64 was to limit such abuses by `prohibiting] private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact' (id., § 1, subd. (e)) and by providing `that only the California Attorney General and local public officials be authorized to file and prosecute actions on behalf of the general public' (id., § 1, subd. (f))." (Californians for Disability Rights v. Mervyn's, LLC (2006) 39 Cal.4th 223, 228, 46 Cal.Rptr.3d 57, 138 P.3d 207.) The rule we announce today is consistent with the ordinary meaning of the language of section 17204 and the voters' stated intent.
The cases decided since Proposition 64 changed the language of section 17204 have concluded a plaintiff suffers an injury in fact for purposes of standing under the UCL when he or she has:
(1) expended money due to the defendant's acts of unfair competition (Aron v. U-Haul Co. of California (2006) 143 Cal.App.4th 796, 802-803, 49 Cal.Rptr.3d 555 [plaintiff alleged he was required to purchase excess fuel when returning rental truck]; Monarch Plumbing Co. v. Ranger Ins. Co. (E.D.Cal., Sept. 25, 2006, No. Civ.S-06-1357) 2006 WL 2734391, at 6, 2006 U.S.Dist. Lexis 68850, *20 [plaintiff alleged he paid higher insurance premiums because of defendant insurer's settlement policies]; Witriol v. LexisNexis Group (N.D.Cal, Feb. 10, 2006, No. C05-02392) 2006 U.S.Dist. Lexis 26670, *18-19 [plaintiff incurred costs to monitor and repair damage to his credit caused by defendants' unauthorized release of private information]; Southern California Housing Rights Center v. Los Feliz Towers Homeowners Assn. Bd. (C.D.Cal.2005) 426 F.Supp.2d 1061, 1069 [housing rights center lost financial resources and diverted staff time investigating case against defendants]; Laster v. T-Mobile USA, Inc. (S.D.Cal.2005) 407 F.Supp.2d 1181, 1194 [defendants advertised cellular phones as free or substantially discounted when purchased with cellular telephone service, but plaintiffs were required to pay sales tax on the full retail value of the phones]);
(2) lost money or property (Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA Inc. (2005) 129 Cal.App.4th 1228, 1240, 1262, 29 Cal. Rptr.3d 521 [plaintiffs home and car were vandalized by animal rights protestors] ); or
(3) been denied money to which he or she has a cognizable claim (Progressive West Ins. Co. v. Superior Court (2005) 135 Cal.App.4th 263, 269-270, 285, fn. 5, 37 Cal.Rptr.3d 434 [insurance company paid insured's medical bills, then sued to recover that money when insured collected damages from the third party who caused his injuries; insured had standing to bring UCL claim against insurance company]; Starr-Gordon v. Massachusetts Mutual Life Ins. Co. (E.D.Cal., Nov. 7, 2006, No. Civ.S-03-68) 2006 WL 3218778, at *1, 6-7, 2006 U.S.Dist. Lexis 83110, *1, 18-19 [plaintiff *315 challenged the process by which defendant terminated her disability benefits]).
Unlike the plaintiffs in the foregoing cases, plaintiffs here have not suffered any injury in fact. They have not been required to pay any money out of their own pockets (other than the fees they paid for their cellular telephone service), they have not lost money or property, and they have not been denied any money that they can allege is rightfully theirs.
In this respect, Cazares v. Household Finance Corp. (C.D.Cal., July 26, 2005, No. CV04-6887) 2005 U.S.Dist. Lexis 39222 is directly on point. Household Finance Corporation (Household) financed second mortgage loans through a contractual arrangement with mortgage broker Pacific Shore Funding (Pacific). (Id, at p. *8.) A number of borrowers who entered into loan transactions with Pacific sued Household and Pacific for violation of the Truth in Lending Act, the Home Ownership and Equity Protection Act, the UCL, California's false advertising law, the California Financial Code, and for rescission and restitution. (Id. at pp. *14-15.) Household filed a motion to dismiss arguing, in relevant part, that after the passage of Proposition 64, the borrowers lacked standing to maintain their UCL claim. (Id. at p. *38.)
The federal district court in Cazares v. Household Finance Corp. dismissed several claims for relief under the UCL for failure to allege standing under the new language of section 17204, because Household's alleged unfair business practices had not been applied to the borrowers. "[N]o Plaintiff currently has standing to bring claims based on failure to disclose the refinancing exemption for prepayment penaltiesbecause none has alleged payment of a prepayment penalty that would not have been paid, if proper disclosure had been made. No Plaintiff appears to have standing to bring claims based on improper structuring because none has alleged that his or her loan was actually subject to improper structuring. Finally, no Plaintiff appears to have standing to bring claims for improper refinancing within twelve months, because no Plaintiff has alleged he or she was subject to such actions." (Cazares v. Household Finance Corp., supra, 2005 U.S.Dist. Lexis 39222 at p. *39.)
Here, too, plaintiffs were not injured in fact because of the inclusion of contractual provisions that have not been enforced, or threatened to be enforced, against them. In the fourth amended complaint, plaintiffs alleged, "[p]ursuant to the terms of the illegal and/or unconscionable [customer service agreement], Plaintiffs and all other class members have paid substantial sums of money to [Sprint]. The Plaintiffs and all of the class members are entitled to restitution of said monies from [Sprint] under the provisions of the UCL." Plaintiffs also alleged that because the challenged portions of the customer service agreement made the agreement illegal and/or unconscionable, all Sprint subscribers have been damaged "in the total amount of monies paid to [Sprint] under the terms of the illegal and/or unconscionable" customer service agreement.
Plaintiffs did not claim any of the allegedly illegal and/or unconscionable contract provisions were ever asserted against them, or prevented them from asserting their rights. Plaintiffs paid for and received cellular telephone service. Plaintiffs did not allege that they did not receive cellular telephone service or that the service was defective. Plaintiffs did not allege they had to pay any more for their cellular telephone service than they would have in the absence of the offending provisions. Even if all the challenged provisions of the customer service agreement *316 were, as plaintiffs claimed, illegal and/or unconscionable, the agreement to provide cellular telephone service is legal and the contract to do so has been performed. Therefore, the appropriate remedy (if any) would be to sever the offending provisions, not to void the entire contract. (Civ.Code, § 1670.5, subd. (a); Little v. Auto Stiegler, Inc. (2003) 29 Cal.4th 1064, 1074-1076, 130 Cal.Rptr.2d 892, 63 P.3d 979.)
Even if plaintiffs' payments of their monthly cellular telephone bills could somehow be construed to be an injury in fact, they would still fail the second prong of the standing testcausation. Plaintiffs have not alleged and cannot allege that they paid their monthly cellular telephone bills as a result of the allegedly illegal and/or unconscionable terms included in the customer service agreement. Two recent cases decided by federal district courts correctly analyze this issue.
In Brown v. Bank of America, N.A (D.Mass.2006) 457 F.Supp.2d 82, 84, the plaintiffs sued Bank of America, alleging that the notice of an additional fee charged to customers of other banks using Bank of America's ATM's was insufficient, under the Electronic Funds Transfer Act (15 U.S.C. § 1693), the consumer protection laws of Massachusetts (Mass. Gen. Laws, ch. 93A, §§ 2, 9 (2006)), and the UCL. The federal district court found Bank of America was entitled to summary judgment on the UCL claim because the plaintiffs could not show a loss of money or property caused by Bank of America's unfair practices. (Brown v. Bank of America, N.A., supra, 457 F.Supp.2d at p. 89.) Even if the plaintiffs could have established the fee notice posted on Bank of America's ATM's was insufficient, they could not establish causation of loss because the ATM customer was required to accept the imposition of an additional fee by means of an on-screen prompt during the ATM transaction. (Ibid.) Therefore, the loss of money in the form of the additional fee was not a result of the inadequate fee notice posted on the ATM's.
In Laster v. T-Mobile USA Inc., supra, 407'F.Supp.2d at page 1183, the plaintiffs sued the defendants for, among other things, violation of the UCL. The plaintiffs had entered into bundled transactions with the defendantscellular telephone service providersto purchase cellular telephones and acquire cellular telephone service. (Id. at pp. 1184-1185.) The defendants moved to dismiss the UCL claim for lack of standing. (Id. at p. 1193.) Applying the two-prong test of section 17204, the federal district court concluded the plaintiffs had alleged injury in fact. "Plaintiffs claim they entered into a bundled transaction with Defendants whereby they purchased both a phone and cellular service, and in doing so, were provided with a phone that was falsely advertised as `free' or substantially discounted, when in fact, they were required to pay the sales tax on the full retail value.... Such allegations sufficiently allege an injury in fact." (Laster v. T-Mobile USA Inc., supra, 407 F.Supp.2d at p. 1194.) The plaintiffs' claim, however, failed with respect to the second prong of the testcausation. "Plaintiffs, however, do not include any allegations in their [first amended class action complaint] that they relied on Defendants' advertisements in entering into the transactions. While Plaintiffs meticulously describe the allegedly misleading advertisements (as later described in Plaintiffs' pleadings, a `bait-and-switch' leading to a `fleece'), none of the named Plaintiffs allege that they saw, read, or in any way relied on the advertisements; nor do they allege that they entered into the transaction as a result of those advertisements. [¶] The language of the UCL, as amended by Proposition 64, makes clear *317 that a showing of causation is required as to each representative plaintiff.... Because Plaintiffs fail to allege they actually relied on false or misleading advertisements, they fail to adequately allege causation as required by Proposition 64. Thus, ... Plaintiffs lack standing to bring their UCL and [false advertising law] claims." (Ibid.)
The alleged act of unfair competition in this case is the inclusion of illegal and/or unconscionable provisions in the customer service agreement. Did plaintiffs allege they lost money or property as a result of those provisions? No. Plaintiffs do not allege the amount they paid for their cellular telephone service was tied, directly or indirectly, to the challenged provisions of the customer service agreement. To the contrary, the money they paid was tied to Sprint's provision of cellular telephone service. Plaintiffs did not sufficiently allege they had standing under section 17204, and the trial court correctly sustained Sprint's demurrer on this ground.

III.

Plaintiffs do not have standing under the CLRA.
To assert a claim under the CLRA, a plaintiff must be a "consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by [Civil Code] Section 1770." (Civ.Code, § 1780, subd.(a), italics added.) Plaintiffs alleged Sprint violated the CLRA by "[representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law" (id., § 1770, subd. (a)(14)), and by "[inserting an unconscionable provision in the contract" (id., § 1770, subd. (a)(19)). As with the UCL claim, Sprint argues plaintiffs cannot assert a claim under the CLRA because they did not suffer any damage as a result of the inclusion of the challenged contract provisions.

A. Plaintiffs did not allege any damage within the meaning of the CLRA.

The ordinary meanings of the terms used by Civil Code section 1780 lead us to conclude plaintiffs failed to allege they suffered any damage. Damage is defined as "loss due to injury: injury or harm to person, property, or reputation" (Webster's 3d New Internat. Diet., supra, at p. 571), or as "[l]oss or injury to person or property" (Black's Law Diet., supra, at p. 416). Suffer means "[t]o experience or sustain physical or emotional pain, distress, or injury" (Black's Law Diet., supra, at p. 1474), or "to sustain loss or damage" (Webster's 3d New Internat. Diet., supra, at p. 2284).
The CLRA specifies that its provisions are to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." (Civ. Code, § 1760.) Plaintiffs rely primarily on language from the Supreme Court's opinion in Kagan v. Gibraltar Sav. & Loan Assn. (1984) 35 Cal.3d 582, 587, 200 Cal. Rptr. 38, 676 P.2d 1060 (Kagan), in which the plaintiff, individually and as a class representative, sued Gibraltar Savings and Loan Association (Gibraltar) for violation of the CLRA.
The plaintiff, Kagan, alleged Gibraltar had advertised goods or services with the intent not to sell them as advertised (Civ. Code, § 1770, former subd. (i)), and represented that the consumer would receive an economic benefit, when the ability to earn the benefit was contingent on an event *318 occurring after the transaction was consummated (id., § 1770, former subd. (q)).[3] (Kagan, supra, 35 Cal.3d at p. 588, 200 Cal.Rptr. 38, 676 P.2d 1060.) Kagan and her husband opened individual retirement accounts (IRA's) at Gibraltar in 1979. (Id. at p. 587, 200 Cal.Rptr. 38, 676 P.2d 1060.) Before opening the accounts, Kagan had read newspaper advertisements stating Gibraltar's policy was to not charge fees for administering IRA's, and a promotional brochure in a Gibraltar district office representing: "`No commissions. No establishment fees. No management fees.'" (Ibid.)
Kagan opened IRA's for herself and her husband at Gibraltar because of Gibraltar's representation it would not charge those fees. (Kagan, supra, 35 Cal.3d at p. 587, 200 Cal.Rptr. 38, 676 P.2d 1060.) While opening the accounts, however, Kagan noticed a reference in the account agreement to a trustee's fee of $7.50 per year, but was assured by an unspecified Gibraltar employee that Gibraltar had a practice of not charging that fee to its customers. (Ibid.) Later, Kagan received a letter from Gibraltar, advising her that it would, in fact, deduct a $7.50 trustee's fee from all IRA's. (Ibid.) After Kagan and her husband sent a demand letter to Gibraltar, it promised to remove from its branches the promotional brochures referencing the trustee's fee, advised her the trustee's fee had not been deducted from her IRA, and reimbursed her husband for the trustee's fee deducted from his IRA. (Id. at pp. 588-589, 200 Cal.Rptr. 38, 676 P.2d 1060.)
Kagan sued Gibraltar, on her own behalf and as a representative of a class of persons who had allegedly been induced to establish IRA's as a result of Gibraltar's alleged false advertising and misrepresentations. (Kagan, supra, 35 Cal.3d at p. 589, 200 Cal.Rptr. 38, 676 P.2d 1060.) The trial court granted Gibraltar's motion to determine the action was without merit.[4] (Kagan, supra, 35 Cal.3d at p. 589, 200 Cal.Rptr. 38, 676 P.2d 1060.) It did so on the ground that Kagan had not suffered any injury or sustained any damage cognizable under the CLRA because the trustee's fee had never been deducted from her IRA, and Kagan was therefore not a member of the class she purported to represent. (Ibid.)
The Supreme Court reversed. The court concluded the demand letter from Kagan and her husband was a demand on behalf of a class of persons affected by Gibraltar's deceptive practices, within the meaning of Civil Code section 1782, subdivision (a). (Kagan, supra, 35 Cal.3d at p. 592, 200 Cal.Rptr. 38, 676 P.2d 1060.) In order to avert a class action lawsuit, Gibraltar was therefore required by statute, within 30 days after receiving the demand letter, to (1) identify all potential class members; (2) notify the potential class members that Gibraltar would make recompense to them upon request; (3) provide the requested relief; and (4) cease engaging in the deceptive practices. (Id. at p. 591, 200 Cal.Rptr. 38, 676 P.2d 1060; Civ.Code, § 1782, subd. (c).) Gibraltar satisfied none of these requirements. Gibraltar did not identify or communicate *319 with any other members of the purported class, and did not stop making the allegedly misleading representations about the imposition of the trustee's fee. (Kagan, supra, 35 Cal.3d at p. 592, 200 Cal.Rptr. 38, 676 P.2d 1060.) Therefore, the trial court erred by determining the class action was without merit. (Ibid.)
The Supreme Court also held the CLRA prevents a defendant such as Gibraltar from "`picking off'" class action plaintiffs by providing individual remedies. (Kagan, supra, 35 Cal.3d at p. 593, 200 Cal.Rptr. 38, 676 P.2d 1060.) Although Gibraltar did not deduct the trustee's fee from Kagan's account, and did reimburse her husband for the money deducted from his account, a class action filed by Kagan still could have merit. (Id. at pp. 593-595, 200 Cal. Rptr. 38, 676 P.2d 1060.)
Finally, the Supreme Court remanded the case to the trial court to consider whether Kagan was an appropriate class representative, specifically noting that on remand the trial court could "`take into account that the named plaintiff[ ][has] already obtained [her] individual benefits from the action.'" (Kagan, supra, 35 Cal.3d at p. 596, 200 Cal.Rptr. 38, 676 P.2d 1060.)
Plaintiffs seize on the following language from Kagan: "We thus reject Gibraltar's effort to equate pecuniary loss with the standing requirement that a consumer `suffer[] any damage.' As it is unlawful to engage in any of the deceptive business practices enumerated in [Civil Code] section 1770, consumers have a corresponding legal right not to be subjected thereto. Accordingly, we interpret broadly the requirement of section 1780 that a consumer `suffer[ ] any damage' to include the infringement of any legal right as defined by section 1770." (Kagan, supra, 35 Cal.3d at p. 593, 200 Cal.Rptr. 38, 676 P.2d 1060, fn. omitted.) From this language, plaintiffs argue they sufficiently alleged damage within the meaning of Civil Code section 1780 simply by alleging inclusion of illegal and/or unconscionable language in the customer service agreement.
Considering the facts and procedural history of Kagan, the Kagan court's concern about the danger of permitting the defendant to "pick off a representative plaintiff in a class action, the Kagan court's focus on the requirements of Civil Code section 1782, subdivision (c), and the words of section 1780 itself requiring "damage," we do not agree Kagan can be as broadly interpreted as plaintiffs contend. Some "damage" must befall the consumer, lest the express statutory language requiring "damage" be superfluous. In Kagan, the plaintiff was damaged even though she personally suffered no pecuniary loss, because she opened an account at Gibraltar rather than some other bank as a result of material written and oral misrepresentations, she was told by Gibraltar her account would be debited, and her husband's account had been debited.
In contrast, in the present case, plaintiffs do not claim they obtained cellular telephone service from Sprint because of any misrepresentations regarding any of the allegedly illegal and/or unconscionable terms in the customer service agreement. In the more than 23 years since Kagan was filed, not a single published decision has cited it for the proposition that an individual representing a class of plaintiffs need not have suffered any damage to maintain a cause of action under the CLRA.
Plaintiffs rely on two other cases for the proposition that a violation of Civil Code section 1770, subdivision (a)(19), without any actual damage, is sufficient to confer standing under the CLRA. In Truta v. Avis Rent A Car System, Inc. (1987) 193 Cal.App.3d 802, 808, 238 Cal.Rptr. 806, the plaintiff alleged the collision damage waiver *320 in the defendants' rental car agreement was unconscionable. The defendants demurred on the ground that unconscionability could only be a defense to enforcement of a contract, and was not in and of itself a ground for affirmative relief. (Id. at pp. 817-818, 238 Cal.Rptr. 806.) The appellate court rejected this argument, since Civil Code section 1770, former subdivision (s),[5] made the insertion of an unconscionable provision a deceptive practice under the CLRA. (Truta v. Avis Rent A Car System, Inc., supra, 193 Cal.App.3d at pp. 818-819, 238 Cal.Rptr. 806.) However, the case did not address, much less resolve, whether a plaintiff has standing to assert a claim under the CLRA based on the mere existence of an allegedly unconscionable contract term.
In California Grocers Assn. v. Bank of America (1994) 22 Cal.App.4th 205, 217, 27 Cal.Rptr.2d 396, the court noted that the CLRA permits a consumer to bring an action for damages and injunctive relief based on the insertion of an unconscionable provision in a contract. The court concluded the CLRA did not apply because the plaintiff was not a consumer of goods or services. (Ibid.) The issue in the instant casewhether the operative complaint contained allegations of damage sufficient to show standing under Civil Code section 1780, subdivision (a)was not before the court in California Grocers Assn. v. Bank of America.

B. Plaintiffs did not allege causation.

Additionally, causation of damage is a separate element of a claim under the CLRA. (Civ.Code, § 1780, subd. (a); miens v. TD Waterhouse Group, Inc. (2003) 120 Cal.App.4th 746, 754, 15 Cal.Rptr.3d 271; Massachusetts Mutual Life Ins. Co. v. Superior Court (2002) 97 Cal.App.4th 1282, 1292, 119 Cal.Rptr.2d 190.) In Nordberg v. Trilegiant Corp. (N.D.Cal. 2006) 445 F.Supp.2d 1082, 1097, a federal district court interpreting the CLRA concluded: "Relief under the CLRA is available to those consumers who suffer `damage as a result of the use or employment by any person of a method, act, or ... practice declared to be unlawful under [Civil Code] section 1770.' [Citation.] Thus, for a misrepresentation to be actionable-under section 1770 it need only `result' in damage to the consumer. In the present action, plaintiffs allege misrepresentations pursuant to different subsections of CLRA's section 1770 and thus are not required to plead fraud with particularity but must merely demonstrate that the misrepresentations resulted in harm."
As with their UCL claim, plaintiffs' CLRA claim fails because plaintiffs have not suffered any damage as a result of Sprint's inclusion of one or more allegedly illegal and/or unconscionable provisions in the customer service agreement. Plaintiffs have not alleged they suffered any damage as a result of the inclusion of any provision in the customer service agreement. As noted ante, the payment of a monthly service fee in exchange for the provision of services is not damage.

IV.

The trial court correctly sustained Sprint's demurrer to the cause of action for declaratory relief.
The fourth amended complaint's cause of action for declaratory relief was based entirely on the allegations of plaintiffs' claims for violation of the UCL and the CLRA. The declaratory relief claim incorporated by reference all other allegations of the fourth amended complaint, and then alleged: "A controversy has arisen and now exists between Plaintiffs and the absent class member's on the one hand, and Defendants on the other hand, concerning *321 their respective rights and duties in that Plaintiffs and the absent class members contend that the Defendants' [customer service agreement] is illegal and/or unconscionable, and that the Defendants are enforcing against the Plaintiffs and other class members this illegal and/or unconscionable [customer service agreement], whereas Defendants dispute these contentions, and contend that their [customer service agreement] is not an illegal and/or unconscionable agreement. Thus, there is an actual controversy relating to the legal rights and duties of the respective parties under a written agreement, which the Plaintiffs contend is illegal and unenforceable. The Defendants have unlawfully enforced this illegal and/or unconscionable agreement by collecting money from the Plaintiffs and other class members pursuant to the terms of the standard form pre-printed [customer service agreement.]"
As discussed ante, plaintiffs have failed to state a claim under either the UCL or the CLRA because they lack standing to do so. There are no other facts that reveal an actual controversy exists between the parties. Therefore, the fourth amended complaint does not state a cause of action for declaratory relief. (See City of Cotati v. Cashman (2002) 29 Cal.4th 69, 79, 124 Cal.Rptr.2d 519, 52 P.3d 695 ["`The fundamental basis of declaratory relief is the existence of an actual, present controversy over a proper subject'"]; Code Civ. Proc., § 1060.)

Disposition
The judgment is affirmed. Respondent to recover costs on appeal.
WE CONCUR: ARONSON, Acting P.J., and IKOLA, J.
NOTES
[1] Sprint also argued the customer service agreement provisions of which plaintiffs complained were not unconscionable or illegal. The trial court did not address this argument, and we need not consider it, given our holding on plaintiffs' lack of standing.
[2] Definitions from a dictionary, although not binding, are "useful" to our analysis. (MacKinnon v. Truck Ins. Exchange (2003) 31 Cal.4th 635, 649, 3 Cal.Rptr.3d 228, 73 P.3d 1205.)
[3] In 1996, Civil Code section 1770 was amended. Former subdivisions (a) through (w) were redesignated as subdivisions (a)(1) through (a)(23). These changes in section 1770 do not affect the analysis of earlier cases interpreting it.
[4] If an action is brought as a class action under Civil Code section 1781, subdivision (a), the defendant may not move for summary judgment under Code of Civil Procedure section 437c. (Civ.Code, § 1781, subd. (c)(3).) Instead, the defendant may move for a determination that the action is without merit. (Id.,% 1781, subd. (c)(3).)
[5] See ante, footnote 3.